# United States Court of Appeals
## for the First Circuit

No. 08-2310

―――――――――――――

ELEANOR McCULLEN, JEAN BLACKBURN ZARRELLA,
CARMEL FARRELL, ERIC CADEN, and GREGORY A.SMITH,
Plaintiffs-Appellants,

v.

MARTHA COAKLEY, Attorney General
for the Commonwealth of Massachusetts,
Defendant-Appellee.

―――――――――――――

ON APPEAL FROM AN ORDER DENYING INJUNCTIVE RELIEF ENTERED BY THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

―――――――――――――

**Brief of Martha Coakley, Attorney General
for the Commonwealth of Massachusetts, Appellee**

―――――――――――――

MARTHA COAKLEY
*ATTORNEY GENERAL OF MASSACHUSETTS*

Kenneth W. Salinger, *Assistant Attorney General*
   Administrative Law Division
   First Circuit Bar No. 24380
Anna-Marie Tabor, *Assistant Attorney General*
   Civil Rights Division
   First Circuit Bar No. 1132893
One Ashburton Place
Boston, MA  02108
617.963.2075
ken.salinger@state.ma.us

February 25, 2009

# Table of Contents.

**Page**

Jurisdiction. ...........................................................................................1

Issues Presented. ...................................................................................1

Statement of the Case.............................................................................2

Statement of the Relevant Facts.............................................................3

    1.    This Court Held that the Original Massachusetts Buffer Zone
        Statute Was Constitutional. ..................................................................3

    2.    The Legislature Revised the Buffer Zone Statute To Protect
        Public Safety and Access to Medical Services. ....................................7

    3.    The 2007 Amendment Changed the Size and Nature of the
        Buffer Zone. .......................................................................................10

    4.    The Attorney General's January 2008 Guidance Letters Were
        Consistent With This Court's Prior Rulings Regarding the
        Constitutionality of the Statutory Exemptions....................................11

    5.    The Revised Act Has Improved Public Safety While Allowing
        For Continued Protests and Other Communicative Activities
        Next to Clinics....................................................................................13

Summary of Argument. ..........................................................................14

Argument.................................................................................................16

    I.    Standards of Review........................................................................17

        A.    The Court Must Review Legal Conclusions De Novo,
            and Independently Examine the Facts. ....................................17

        B.    The Court Must Hold Plaintiffs to their Heavy Burden of
            Proving that the Act Is Unconstitutional on its Face. ..............18

    II.    The Act Is a Lawful "Time and Place" Regulation of Who Is
        Allowed Near Clinic Entrances During Business Hours. ..................20

**Page**

A.   The Act Is Content Neutral and Viewpoint Neutral. ...............21

1.   The Revised Act Still Has a Content-Neutral
Purpose and Is Content-Neutral on its Face. .................21

2.   The Fact that the Act Protects Small Areas
Adjacent to Clinics Does Not Make It Content- or
Viewpoint-Based. ........................................................24

3.   The Exemption Allowing Clinic Employees To Be
In the Zone When Acting Within the Scope of
Their Employment Is Not Viewpoint
Discrimination. .............................................................25

4.   The Attorney General's Guidance Letters Do Not
Undermine the Content-Neutrality of the Act. ..............28

B.   The Act Is Narrowly Tailored To Address the
Commonwealth's Significant Interests in Protecting
Public Safety and Clinic Access. ..............................................29

1.   The Legislature Narrowly Tailored the Revised
Buffer Zone To Solve Problems that Arose Under
the Original Act. ...........................................................29

2.   The Buffer Zone Chosen by the Legislature Need
Not Be the Least Restrictive or Smallest Possible
Solution. .......................................................................32

3.   Whether These Plaintiffs Are Law Abiding Is Not
Relevant to Whether the Act Is Constitutional. .............34

4.   Whether Existing Laws Adequately Protected
Public Safety and Clinic Access Was For the
Legislature To Decide. ..................................................36

C.   The Act Leaves Open Ample Alternative Channels
of Communication. ....................................................................37

1.   The Act Places No Limit On Expressive Activity
Outside Buffer Zones. ...................................................37

**Page**

2.  Plaintiffs Have No Constitutional Right to Approach Within a Few Feet of All Strangers in All Locations. ..............................................40

III.   Plaintiffs' Other Free Speech Claims Are Without Merit..................44

A.   The Act Is Not Unconstitutionally Overbroad.........................44

B.   The Act Imposes No Prior Restraint on Speech. .....................46

IV.   Plaintiffs' Other Facial Challenges to the Act's Exemptions Are Also Without Merit. ..........................................................................47

A.   The "Employees or Agents" Exemption Does Not Violate Equal Protection. ...........................................................47

B.   The Exemptions as Construed by the Attorney General Do Not Render the Act Unconstitutionally Vague. ..................48

Conclusion. ...............................................................................................51


Statutory Addendum

G.L. c. 266, § 120E1/2
(as amended November 13, 2007)......................Statutory Addendum 1
G.L. c. 266, § 120E 1/2, ¶ (b)
(as in effect prior to November 13, 2007)..........Statutory Addendum 3

## Table of Authorities.

**Page**

**Cases**

Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197 (1st Cir. 1999) ........................3

American Communications Ass'n v. Douds, 339 U.S. 382 (1950).......................50

Berger v. Seattle, 512 F.3d 582 (9th Cir. 2008)........................................................48

Bl(a)ck Tea Society v. Boston, 378 F.3d 8 (1st Cir. 2004) ............................. passim

Board of Airport Commissioners of the City of Los Angeles v. Jews for
    Jesus, Inc., 482 U.S. 569 (1987) ..........................................................................46

Board of Trustees of the State Univ. of New York v. Fox,
    492 U.S. 469 (1989)...............................................................................................44

Bose Corp. v. Consumers Union, 466 U.S. 485 (1984)..........................................18

Brasslett v. Cota, 761 F.2d 827 (1st Cir. 1985) ......................................................48

Broadrick v. Oklahoma, 413 U.S. 601 (1973)........................................... 45, 49, 50

Bryant v. Gates, 532 F.3d 888 (D.C. Cir. 2008).....................................................44

Buckley v. Valeo, 424 U.S. 1 (1976).......................................................................37

Burson v. Freeman, 504 U.S. 191 (1992) ...................................................... passim

City Council of Los Angeles v. Taxpayers for Vincent,
    466 U.S. 789 (1984).................................................................... 19, 41, 45

Colorado Right To Life Committee, Inc. v. Coffman,
    498 F.3d 1137 (10th Cir. 2007) ...........................................................................45

Commonwealth v. Brogan, 415 Mass. 169, 612 N.E.2d 656 (1993) ......................4

Commonwealth v. Cotter, 415 Mass. 183, 612 N.E.2d 1145 (1993) ......................4

Commonwealth v. Filos, 420 Mass. 348, 649 N.E.2d 1085 (1995) ........................4

**Page**

Commonwealth v. Manning, 41 Mass. App. Ct. 696, 673 N.E.2d 73 (1996)...........4

Crawford v. Marion County Elec. Bd., 128 S.Ct 1610 (2008)................................20

Daggett v. Commission on Governmental Ethics and Election Practices,
    205 F.3d 445 (1st Cir. 2000)................................................................................18

De Araujo v. Gonzales, 457 F.3d 146 (1st Cir. 2006). .............................................3

FCC v. Beach Communications, Inc., 508 U.S. 307 (1993)....................................48

Frisby v. Schultz, 487 U.S. 474 (1988) ..................................................................41

Grayned v. Rockford, 408 U.S. 104 (1972)............................................................51

Greci v. Birknes, 527 F.2d 956 (1st Cir. 1976) .....................................................18

Heffron v. International Soc. for Krishna Consciousness, Inc.,
    452 U.S. 640 (1981)................................................................. 37, 41

Hill v. Colorado, 530 U.S. 703 (2000)............................................................ passim

Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42 (1st Cir. 2003) .............................48

Los Angeles Police Dept. v. United Reporting Publishing Corp.,
    528 U.S. 32 (1999)...............................................................................................45

Madsen v. Women's Health Center, Inc., 512 U.S. 753 (1994)..................... passim

Martin v. Struthers, 319 U.S. 141 (1943) ..............................................................43

Massachusetts Ass'n of HMOs v. Ruthardt, 194 F.3d 176 (1st Cir. 1999).............26

McConnell v. FEC, 540 U.S. 93 (2003) .................................................................45

McCullen v. Coakely, 573 F. Supp. 2d 382 (D. Mass. 2008) ..................................3

McGuire v. Reilly, 260 F.3d 36 (1st Cir. 2001)................................................ passim

McGuire v. Reilly, 230 F. Supp. 2d 189 (D. Mass. 2002).........................................6

**Page**

McGuire v. Reilly, 271 F. Supp. 2d 335 (D. Mass. 2003)..........................................7

McGuire v. Reilly, 386 F.3d 45 (1st Cir. 2004),
   cert. denied, 544 U.S. 974 (2005)..................................................... passim

Menotti v. Seattle, 409 F.3d 1113 (9th Cir. 2005)............................................ 39, 44

Meyer v. Grant, 486 U.S. 414 (1988) .......................................................43

Mile Road Corp. v. Boston, 345 Mass. 379, 187 N.E.2d 826 (1963) ....................35

Naser Jewelers, Inc. v. Concord, 513 F.3d 27 (1st Cir. 2008).............. 17, 18, 32, 33

New York State Club Ass'n, Inc. v. City of New York,
   487 U.S. 1 (1988)..................................................................... 19, 45

New York Times v. Sullivan, 376 U.S. 254 (1964) .................................................18

Opinion of the Justices to the Senate, 430 Mass. 1205, 723 N.E.2d 1 (2000) ..........5

Parker v. Levy, 417 U.S. 733 (1974) .......................................................50

Pharmaceutical Care Management Ass'n v. Rowe,
   429 F.3d 294 (1st Cir. 2005)..............................................................19

Planned Parenthood League of Massachusetts  v. Blake,
   417 Mass. 467, 631 N.E.2d 985 (1994)..............................................................4

Planned Parenthood League of Massachusetts  v. Operation Rescue,
   406 Mass. 701, 550 N.E.2d 1361 (1990)..............................................................4

Planned Parenthood League of Massachusetts v. Bell,
   424 Mass. 573, 677 N.E.2d 204 (1997)..............................................................4

Prince v. Massachusetts, 321 U.S. 158 (1944) .......................................................35

Schenck v. Pro-Choice Network of Western New York,
   519 U.S. 357 (1997)..................................................................... passim

Sueiro Vazquez v. Torregrosa de la Rosa, 494 F.3d 227 (1st Cir. 2007).................3

**Page**

Sullivan v. Augusta, 511 F.3d 16 (1st Cir. 2007) .............................................. 41, 47

Turner Broadcasting System, Inc. v. F.C.C., 520 U.S. 180 (1997) .................. 32, 37

United States v. Lachman, 387 F.3d 42 (1st Cir. 2004) .........................................49

United States v. Raines, 362 U.S. 17 (1960) ...........................................................51

United States v. Salerno, 481 U.S. 739 (1987) .......................................................19

United States v. Williams, 128 S.Ct. 1830 (2008)...................................................45

Veilleux v. National Broadcasting Co., 206 F.3d 92 (1st Cir. 2000) ......................18

Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
    455 U.S. 489 (1982)..........................................................................................27

Virginia v. Hicks, 539 U.S. 113 (2003) ..................................................................45

Ward v. Rock Against Racism, 491 U.S. 781 (1989).................................... passim

Washington State Grange v. Washington State Republican Party,
    128 S.Ct  1184 (2008)..................................................................................20, 51

Washington v. Glucksberg, 521 U.S. 702  (1997)...................................................20

**Statutes**

28 U.S.C. § 1292(a)(1).............................................................................................1

28 U.S.C. § 1331 .....................................................................................................1

Mass. G.L. c. 266, § 120E1/2 ....................................................................... 1, 10, 25

Mass. St. 2000, c. 217 ...................................................................................... 6, 10

Mass. St. 2007, c. 155 ...........................................................................................1, 7

## Jurisdiction.

This appeal concerns plaintiffs' claims that a Massachusetts statute, on its face, violates the First and Fourteenth Amendments to the United States Constitution.  The district court had subject matter jurisdiction under 28 U.S.C. § 1331.  Plaintiffs appeal from an order rejecting their facial challenge and denying their request for injunctive relief.  This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## Issues Presented.

To protect public safety and patient access to medical care, the Massachusetts Legislature amended a statute that limits access to public ways and sidewalks within a "buffer zone" immediately next to entrances and driveways of reproductive health care facilities ("RHCFs" or "clinics").  See Mass. G.L. c. 266, § 120E1/2 (the "Act"); Mass. St. 2007, c. 155.  The original Act was twice upheld by this Court against constitutional challenges.  See McGuire v. Reilly, 260 F.3d 36, 39 (1st Cir. 2001) ("McGuire I") (reversing preliminary injunction because "the Act, on its face, lawfully regulates the time, place, and manner of speech without discriminating based on content or viewpoint"); McGuire v. Reilly, 386 F.3d 45 (1st Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("McGuire II") (Act held constitutional on its face and as applied).  Plaintiffs brought this suit after the Act was revised to modify the size and nature of the buffer zone.

Plaintiffs' appeal raises the following issues regarding the revised Act:

1.  On its face, is the Act content-neutral, is it narrowly-tailored to serve a significant governmental interest, and does it leave open ample alternative

- 1 -

channels for communication, so that it is a lawful regulation of who is allowed, during business hours, immediately next to RHCF entrances?

2.  If the Act on its face is a lawful regulation of the time and place where expressive activities are allowed near clinic entrances, because it satisfies the three-part test of content-neutrality, narrow tailoring, and preserving alternative channels of communication, do plaintiffs' claims that the Act is (a) overbroad, or (b) an unconstitutional prior restraint of speech, fail as a matter of law?

3.  On its face, does the Act's exemption for clinic employees and agents acting within the scope of their employment violate equal protection, even though this Court has already found that the exemption has a rational basis?

4.  Do the Act's exemptions, as construed by Massachusetts Attorney General Martha Coakley, render the Act on its face unconstitutionally vague in violation of due process?

## Statement of the Case.

Plaintiffs filed this action against Attorney General Coakley in January 2008, claiming that the revised Act is unconstitutional both on its face and as applied.  Appendix ("A.") 6, 19-42.  At plaintiffs' request, the district court bifurcated these two aspects of plaintiffs' claims.  A.10.  Plaintiffs' facial challenge was decided after a bench trial based on an agreed-upon factual record.  A.10-14.

On August 22, 2008, the district court (Tauro, J.) ruled in favor of Attorney General Coakley; it held that the Act as revised is constitutional on its face, and denied plaintiffs' request for preliminary and permanent injunctive relief.

McCullen v. Coakley, 573 F. Supp. 2d 382 (D. Mass. 2008); Addendum A ("Add. A") to Plaintiffs' Brief ("Ps' Br."); A.14.

On September 16, 2008, plaintiffs filed a timely notice of appeal and a motion to stay, pending this appeal, their claims that the Act is unconstitutional as applied. A.14. The district court granted the motion to stay. A.15.

On appeal, plaintiffs no longer argue that the Act on its face violates plaintiffs' right to the free exercise of religion (Count IV to plaintiffs' complaint) and their alleged freedom to loiter (Count VII). Cf. A.35-36, 38-39. The passing suggestion that plaintiffs may have a "liberty interest" to move "from one place to another," Ps' Br. at 35, does not "rise to the level of a cognizable appellate argument." De Araujo v. Gonzales, 457 F.3d 146, 153 (1st Cir. 2006). "[A]rguments not asserted in appellant[s'] opening brief cannot be raised for the first time in [their] reply brief." Sueiro Vazquez v. Torregrosa de la Rosa, 494 F.3d 227, 236 (1st Cir. 2007).

Two briefs were submitted to the Court by amicae curiae. The Court may not consider issues that are raised only by amicae, and not pressed by the plaintiffs. Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197, 205 n.6 (1st Cir. 1999) ("Amici cannot interject . . . issues which the litigants have chosen to ignore.").

## Statement of the Relevant Facts.

### 1.    This Court Held that the Original Massachusetts Buffer Zone Statute Was Constitutional.

The Massachusetts Legislature passed the Reproductive Health Care Facilities Act in 2000 because it was "concerned about a history of violence

outside abortion clinics and the harassment and intimidation of women attempting to use such facilities." McGuire II, 386 F.3d at 48. "By the late 1990s, Massachusetts had experienced repeated incidents of violence and aggressive behavior outside RHCFs." McGuire I, 260 F.3d at 39. These incidents included a 1994 shooting in which two clinic employees were killed and several other persons were injured, and repeated court injunctions that failed to end harassing and physically confrontational conduct by protestors next to RHCFs. See McGuire II, 386 F.3d at 48; McGuire I, 260 F.3d at 39 & 52.[1]

Responding to these concerns, "[t]he Massachusetts legislature, confronted with an apparently serious public safety problem, investigated the matter thoroughly. That investigation yielded solid evidence that abortion protestors are particularly aggressive and patients particularly vulnerable as they enter or leave RHCFs." McGuire I, 260 F.3d at 44. In April 1999, the state Senate heard evidence that patients and staff trying to enter clinics were confronted with physical violence and threats of violence. A.279-292. "The received testimony chronicled the harassment and intimidation that typically occurred outside RHCFs.

---

[1]    See also Planned Parenthood League of Massachusetts v. Bell, 424 Mass. 573, 677 N.E.2d 204 (1997) (affirming preliminary injunction barring protestor from within 50 feet of clinic); Commonwealth v. Manning, 41 Mass. App. Ct. 696, 673 N.E.2d 73 (1996) (affirming criminal contempt conviction for blocking clinic access); Commonwealth v. Filos, 420 Mass. 348, 649 N.E.2d 1085 (1995) (same); Planned Parenthood League of Massachusetts  v. Blake, 417 Mass. 467, 631 N.E.2d 985 (1994) (same); Commonwealth v. Cotter, 415 Mass. 183, 612 N.E.2d 1145 (1993) (same); Commonwealth v. Brogan, 415 Mass. 169, 612 N.E.2d 656 (1993) (same); Planned Parenthood League of Massachusetts v. Operation Rescue, 406 Mass. 701, 550 N.E.2d 1361 (1990) (same).

In addition, numerous witnesses addressed the emotional and physical vulnerability of women seeking to avail themselves of abortion services, and gave accounts of the deleterious effects of overly aggressive demonstrations on patients and providers alike." McGuire I, 260 F.3d at 39; Add. A at 5-6.

In 1999, the Legislature considered adopting a fixed, 25-foot buffer zone around clinic entrances and driveways. McGuire I, 260 F.3d at 39. The Massachusetts Supreme Judicial Court advised that such a law would be constitutional. Opinion of the Justices to the Senate, 430 Mass. 1205, 1211-12, 723 N.E.2d 1, 5-6 (2000).

After the Supreme Court decided Hill v. Colorado, 530 U.S. 703 (2000), however, the Legislature instead adopted a 6-foot "floating" buffer zone within an 18-foot radius from any RHCF entrance or driveway, modeled after the Colorado statute. McGuire I, 260 F.3d at 40. The Governor signed this version into law on August 10, 2000. A.281; Add. A at 8.

The original Act included the following three provisions. First, it provided that:

> No person shall knowingly approach another person or occupied motor vehicle within six feet of such person or vehicle, unless such other person or occupant of the vehicle consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education or counseling with such other person in the public way or sidewalk area within a radius of 18 feet from any entrance door or driveway to a reproductive health care facility or within the area within a rectangle not greater than six feet in width created by extending the outside boundaries of any entrance door or driveway to a reproductive health care facility at a right angle and in straight lines to the point where such lines intersect the sideline of the street in front of such entrance door or driveway."

Mass. St. 2000, c. 217, § 2(b); Add. A at 8-9.

Second, the Legislature exempted the following four categories of persons from the Act's coverage:

> (1) persons entering or leaving such facility;
>
> (2) employees or agents of such facility acting within the scope of their employment;
>
> (3) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and
>
> (4) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility."

Mass. St. 2000, c. 217, § 2(b); Add. A at 9.

Third, the Act stated that these provisions "shall only take effect during a facility's business hours and [only] if the area contained within the radius and rectangle described in said subsection (b) is clearly marked and posted." Mass. St. 2000, c. 217, § 2(c); Add. A at 9.

The original Act was challenged in federal court on constitutional grounds. Add. A at 11-12. This Court reversed a preliminary injunction against enforcement of the Act, holding that as a matter of law the original Act, "on its face, lawfully regulates the time, place, and manner of speech without discriminating based on content or viewpoint." McGuire I, 260 F.3d at 39. On remand, the district court allowed defendants' motion for summary judgment on plaintiffs' claims that the Act was unconstitutional on its face and as applied. See McGuire v. Reilly, 230 F. Supp. 2d 189, 193 n.10 (D. Mass. 2002) (facial

challenge); <u>McGuire v. Reilly</u>, 271 F. Supp. 2d 335, 343 (D. Mass. 2003) (as applied).  This Court affirmed.  <u>McGuire II</u>, 386 F.3d at 65-66.

During the <u>McGuire</u> litigation, the Massachusetts Attorney General gave a limiting construction to the statutory exemption for "employees or agents of such facility acting within the scope of their employment."  <u>McGuire II</u>, 386 F.3d at 52; Add. A at 9-10.  This Court found that the Attorney General's guidance letters have "clearly construed the exemption to exclude pro-abortion or partisan speech from the term 'scope of their employment."  <u>McGuire II</u>, 386 F.3d at 52 n.1.  It held that "[t]he Attorney General's interpretation . . . is clearly a proper, content-neutral way of interpreting the exemption."  <u>Id</u>. at 64.

## 2.    The Legislature Revised the Buffer Zone Statute To Protect Public Safety and Access to Medical Services.

The Massachusetts Legislature revised the Act in November 2007 "to increase forthwith public safety at reproductive health care facilities," and declared the revision to be "necessary for the immediate preservation of the public safety." Mass. St. 2007, c. 155; A.43.  It acted after learning — in particular through a public hearing before the Joint Committee on Public Safety and Homeland Security on May 16, 2007 — that clinic patients were still being harassed next to RHCF entrances and driveways, clinic access was still being blocked, and law enforcement officials found that the "approach" element of the "floating" buffer zone made it very hard to enforce the original Act.  <u>See</u> A.170-183 (written testimony by clinic staff, volunteers, and representatives, and by Attorney General Martha Coakley); A.211-224, 236-246 (transcript of oral testimony by Attorney

General Coakley, Undersecretary for Criminal Justice Mary Beth Heffernan,

Norfolk District Attorney William Keating, Boston Police Captain William Evans,

and clinic volunteers and staff).

The Legislature "heard testimony from RHCF staff, volunteers and law

enforcement personnel regarding specific incidents of patient harassment and

intimidation in the areas immediately outside RHCF entrances and driveways."

Add. A at 15-16.  Witnesses explained that protestors physically barred access to

various clinics by blocking driveways and doors, and not infrequently screamed at

close range at patients trying to enter clinics.  A.170-77, 180-83, 226-27, 237-38;

Add. A at 16-18.  They testified that these confrontations "terrified" patients; that

some patients "reported feeling too intimidated by the pacing protesters to enter the

property, and turning back;" and that on a regular basis women trying to drive to a

clinic would turn away because protestors were blocking the driveway.  A.170,

227, 237-38; Add. A at  16-18.  Boston Police Capt. William Evans testified that

protestors "wearing police hats and police uniforms" would not infrequently

impersonate police officers as a way to get patients trying to enter the Planned

Parenthood League of Massachusetts facility in Boston ("PPLM-Boston") to

consent to the protestor's approach.  A.232-34.  Attorney General Coakley

summarized the ongoing history of interference with clinic access, and explained

to the Legislature why it raised "an important public safety issue."  Add. A at 15;

A.172-77.

Additional sworn testimony presented to the district court confirmed that,

after passage of the original Act, physically confrontational conduct by protestors

continued to occur immediately in front of clinic entrances and driveways.
A.122-25, 138-39, 252-53.

In addition, law enforcement representatives told the Legislature at the
hearing that:  (i) it was very difficult to enforce the original Act, even when a
protestor was very close to a clinic visitor or staffer inside the 18-foot radius,
because it was hard to determine whether a protester had "approached" someone
else without their consent; and (ii) creating a fixed and clearly defined buffer zone
around RHCF entrances and clinics was needed to address an important public
safety issue.  See Add. A at 19-22; A.143-45, 172-77.

As Capt. Evans explained to the Legislature, under the original Act
protestors could and did stand immediately next to or even in front of a clinic
entrance, well within the 18-foot zone, and force anyone entering or leaving the
clinic to pass immediately next to (and far less than six feet away from) them.
A.143-44, 151-52.  In response to a question from the legislative committee, Capt.
Evans compared the 18-foot buffer zone area to a "goalie's crease," where
"everybody is in everybody's face," which "makes it very difficult" for the police
to determine whether an unlawful "approach" had been made within the buffer
zone.  A.147.  He explained that this made it very hard to keep patients safe
immediately next to clinic entrances.  A.147-48.

Capt. Evans urged the Legislature to adopt a fixed, 35-foot buffer zone,
stating that "[n]ot only will it safeguard the patients going in there but it will also
make public safety official's job a lot easier."  A.144-45.  At the legislative
hearing, two state representatives stood approximately 35 feet apart, the size of the

proposed new buffer zone, and demonstrated that they could speak to and be heard by each other.  A.205-6.

### 3.    The 2007 Amendment Changed the Size and Nature of the Buffer Zone.

The Legislature revised the Act in the manner recommended by Attorney General Coakley, Capt. Evans, and other law enforcement personnel.  A.166-67. The revised Act took effect on November 13, 2007.  Id.; Add. A at 27.

The 2007 revision had the effect of modifying the size and nature of the statutory buffer zone.  The original Act made it unlawful to approach within six feet of someone on a public way or sidewalk inside a zone defined by an 18-foot radius from any RHCF entrance or driveway, if the approach was without the person's consent and was for the purpose of "passing a leaflet or handbill," "displaying a sign," or "engaging in oral protest, education or counseling."  See McGuire II, 386 F.3d at 48-49; Mass. St. 2000, c. 217, § 2¶ (b).  The revised Act makes it unlawful to "knowingly enter or remain on a public way or sidewalk adjacent to [an RHCF] within a radius of 35 feet of any portion of an entrance, exit or driveway of [an RHCF]."  Add. A at 26; Mass. G.L. c. 266, § 120E1/2(b).

In all other substantive respects the buffer zone provision of the Act remains identical to the version upheld by this Court.  The Act continues to apply only during the clinic's business hours, and only if the limits of the buffer zone are "clearly marked and posted."  Mass. G.L. c. 266, § 120E1/2(c); Add. A at 26.  In addition, the Legislature did not revise the statutory exemptions; the same four categories of persons continue to be exempt from the buffer zone restrictions: (1) persons entering or leaving the RHCF; (2) employees or agents of the clinic

acting within the scope of their employment; (3) municipal agents acting within the scope of their employment; and (4) persons crossing through the buffer zone solely for the purpose of reaching a destination other than the clinic.  Mass. G.L. c. 266, § 120E1/2, ¶ (b)(1)-(4); Add. A at 26.

### 4. The Attorney General's January 2008 Guidance Letters Were Consistent With This Court's Prior Rulings Regarding the Constitutionality of the Statutory Exemptions.

On January 25, 2008, the Attorney General's Office sent a guidance letter to all clinics the office had identified in Massachusetts as being subject to the Act, to the local police department of each municipality containing one of these clinics, and to each District Attorney's office with jurisdiction over at least one of those municipalities.  A.192-96; Add. A at 27-28; Addendum C ("Add. C") to Ps' Br. The letters reminded the recipients of the key provisions of the Act.  Id.

Each letter also included guidance from the Attorney General regarding how each of the four exemptions to the buffer zone provision is to be interpreted and applied.  Id.  Specifically, each letter included the following four paragraphs:

> The first exemption — for persons entering or leaving the clinic — only allows people to cross through the buffer zone on their way to or from the clinic.  It does not permit companions of clinic patients, or other people not within the scope of the second or third exemptions, to stand or remain in the buffer zone, whether to smoke, talk with others, or for any other purpose.

> The second exemption — for employees or agents of the clinic acting within the scope of their employment —allows clinic personnel to assist in protecting patients and ensuring their safe access to clinics, but does not allow them to express their views about abortion or to engage in any other partisan speech within the buffer zone.

- 11 -

Similarly, the third exemption — for municipal employees or agents acting within the scope of their employment — does not allow municipal agents to express their views about abortion or to engage in any other partisan speech within the buffer zone.

Finally, the fourth exemption — for persons using the sidewalk or street adjacent to the clinic to reach a destination other than the clinic — applies to individuals who are crossing through the buffer zone, without stopping, to go somewhere other than a location within the zone and other than the clinic, and who are not using the buffer zone for some other purpose while passing through. For example, an individual may cross through the buffer zone to reach and speak with someone outside the zone, to reach and stand in a location outside the zone (perhaps to engage in lawful protest, other speech, or prayer), or to travel on to another place altogether, provided that the individual does not do anything else within the buffer zone (such as expressing their views about abortion or engaging in other partisan speech).

Id.

The Attorney General's discussion in these guidance letters of the second exemption, for clinic employees and agents, reiterates the interpretation previously given this same provision by this Court. Add. A at 28. McGuire I held that this exemption was content-neutral and reasonably related to the public safety objectives of the Act, "because clinic employees often assist in protecting patients and ensuring their safe passage as they approach RHCFs." 260 F.3d at 46. McGuire II noted with approval that the Attorney General "has clearly construed the exemption to exclude pro-abortion or partisan speech from the term 'scope of their employment,'" 386 F.3d at 52 n.1, and held that this interpretation "is clearly a proper, content-neutral way of interpreting the exemption." Id. at 64.

**5.    The Revised Act Has Improved Public Safety While Allowing For Continued Protests and Other Communicative Activities Next to Clinics**

The record evidence regarding the manner in which the revised Act has been implemented to date is relevant to the issues of whether the revised Act is narrowly tailored to address significant government interests, and the extent to which the revised Act leaves open ample alternative channels for communication with patients and staff of RHCFs.

The revised Act has substantially reduced the number of confrontations between protestors and patients or their companions. A.124, 251. It has done so while allowing protestors to communicate with people approaching RHCFs.

At PPLM-Boston, groups of protestors can and do continue to stand near the front entrance and rear garage entrance, outside of the marked buffer zones, bearing large signs, offering leaflets or handbills, praying, singing, chanting, and speaking with or calling out to passersby and persons entering the clinic, sometimes using amplification devices. A.123, 251-53, 259-60, 271-78. "Protestors continue to have close contact with patients and others approaching the clinic." A.252 (sworn statement by Boston Police Detective Arthur O'Connell, based on numerous personal observations outside the PPLM-Boston clinic). Protestors still walk down the sidewalk with and try to hand literature to patients and others approaching the facility on foot, though they now stop at the edge of the marked buffer zone. A.124, 252-53. They also continue to communicate verbally to the patients from outside of the buffer zone with patients who have entered into the buffer zone. A.252. Protestors in front of the clinic can be heard from 40-50 feet away during a typical Saturday protest. A.259-60.

At Women's Health Services in Brookline, "protestors continue to protest and to express their opinions in essentially the same manner and in essentially the same locations as they did under the prior version of the law." A.188-89. The clinic is in a multi-use office building located at 822 Boylston St. (Route 9); its parking lot is accessed from Reservoir Road, a small side street. A.119, 152-54. Patients usually arrive by car, and enter the parking lot by one of two driveways. A.186-87. Cars turning into the parking lot are generally driving too fast to stop. A.189-90. Even before the Act was revised protestors would communicate with visitors to the clinic by standing on a portion of the public sidewalk that today is still outside the revised buffer zone, and hold signs, call out to and ask to speak with people walking in the parking lot, and offer them leaflets. A.188-89. Today, under the revised Act, protestors continue to engage in the same activities from the same part of the public sidewalk. A.155, 188-89. They also continue to affix large signs to cars they park across the street. A.189. From the public sidewalk where the protestors stand, the edge of the parking lot is only a few feet away, across a grassy median. A.152-64. Both before and since the revised Act took effect, people in the parking lot not infrequently respond to protestors by walking toward them, speaking with them, and taking their literature. A.188-89.

### Summary of Argument.

Plaintiffs have failed to meet their heavy burden of proving that the revised Act is unconstitutional on its face. See pages 18-20, below.

On its face, the Act continues to be a lawful restriction on the time or place for engaging in expressive activity in public fora, and does not violate the First

Amendment to the United States Constitution. Pages 20-44. It satisfies all three prongs of the test for evaluating the constitutionality of limitations on the time, place, and manner of speech in public fora. First, the Act regulates the time and place of speech without discriminating based on content or viewpoint. Pages 21-29. Like the original Act upheld in the McGuire litigation, the revised Act has the content-neutral purposes of protecting public safety and patient access to medical services, does not target speech based on its content or viewpoint, and indeed does not ban any speech at all. Pages 21-24. Second, the Act is narrowly tailored to address the Commonwealth's significant interests in ensuring that patients, staff, and others may safely enter RHCFs. Pages 29-37. The Legislature has reasonably determined that a 35-foot buffer zone is required to protect safe clinic access; the Constitution neither requires nor permits the Court to make an independent determination of whether a smaller buffer zone or different exercise of the Commonwealth's police powers would have adequately protected public safety. Id. Third, the Act leaves open ample alternative channels for communicating with individuals entering or leaving a clinic. Pages 37-44. Plaintiffs have a reasonable opportunity while outside the buffer zone to communicate with individuals approaching a clinic. Pages 37-40. They do not have an immutable constitutional right to stand immediately next to a clinic entrance or to approach within a few feet of clinic patients while inside the 35-foot buffer zone. Pages 40-44.

For the same reasons, the revised Act is neither unconstitutionally overbroad (pages 44-46), nor an unlawful prior restraint on speech (pages 46-47).

Finally, there is no merit to plaintiffs' facial challenges to the constitutionality of the statutory exemptions that allow certain categories of persons to be in a clearly marked buffer zone during clinic hours.  First, the exemption for clinic employees or agents acting within the scope of their employment has a rational basis, and therefore does not violate equal protection; indeed, the Court so held in McGuire I.  Pages 47-48.  Second, the fact that the Attorney General used the undefined term "partisan speech" in construing the Act's exemptions does not render the Act unconstitutionally vague.  Pages 48-51.  Plaintiffs concede that the Act clearly applies to them, and that the conduct they seek to engage in next to clinic entrances does not fall within the scope of any of the statutory exemptions as they have been construed by the Attorney General.  They cannot attack the Act on its face on the grounds that it could, in theory, be vague as applied to someone else under different circumstances.  Id.

## Argument.

The Court is not writing on a blank slate in deciding plaintiffs' facial challenge to the revised Act.  Similar, and even more extensive, restrictions on protest within public ways and sidewalks have passed muster as constitutional limitations on the time, place, and manner of speech in public fora.  For example, the Supreme Court and this Court have upheld:

- a statute that bars solicitation of votes and display of campaign materials within 100 feet of a polling place, in Burson v. Freeman, 504 U.S. 191, 210-11 (1992);

- an injunction barring protestors from public rights-of-way within 36 feet of an RHCF's property line, in Madsen v. Women's Health Center, Inc., 512 U.S. 753, 768-770 (1994);

- an injunction barring protestors from within 15 feet of RHCF entrances and driveways, in <u>Schenck v. Pro-Choice Network of Western New York</u>, 519 U.S. 357, 374-76 (1997);

- a statute that established a 100-foot buffer zone around health care facility entrances, within which it was unlawful to approach within eight feet of someone without their consent in order to pass a leaflet, display a sign, or engage in oral protest, education, or counseling, in <u>Hill v. Colorado</u>, 530 U.S. 703 (2000);

- a Massachusetts statute establishing an 18-foot buffer zone around RHCF entrances, within which it was unlawful to approach within six feet of someone without their consent in order to pass a leaflet, display a sign, or engage in oral protest, education, or counseling, in <u>McGuire I</u>, 260 F.3d 36 (1st Cir. 2001), and <u>McGuire II</u>, 386 F.3d 45 (1st Cir. 2004); and

- rules confining demonstrators wishing to be heard by 2004 Democratic National Convention delegates in downtown Boston to a heavily secured "pen," surrounded by fencing and mesh fabric and placed beneath rail tracks, in <u>Bl(a)ck Tea Society v. Boston</u>, 378 F.3d 8 (1st Cir. 2004).

As discussed below, the buffer zone at issue here is narrower than the fixed buffer zones previously upheld in <u>Madsen</u>, <u>Burson</u>, and <u>Bl(a)ck Tea</u>, and not materially different than the fixed 15-foot buffer zone upheld in <u>Schenck</u>.

## I.    STANDARDS OF REVIEW.

### A.    The Court Must Review Legal Conclusions <u>De Novo</u>, and Independently Examine the Facts.

The district court's conclusions of law must be reviewed <u>de novo</u>.  <u>Naser Jewelers, Inc. v. Concord</u>, 513 F.3d 27, 32 (1st Cir. 2008).  In considering plaintiffs' First Amendment claims, this Court also must " 'make an independent

examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' " <u>Bose Corp. v. Consumers Union</u>, 466 U.S. 485, 499 (1984) (quoting <u>New York Times v. Sullivan</u>, 376 U.S. 254, 284-86 (1964)).  The Court must independently review determinations "that specifically involve the application of First Amendment law to specific facts." <u>Veilleux v. National Broadcasting Co.</u>, 206 F.3d 92, 107 (1st Cir. 2000).

Because this appeal concerns a facial challenge to the constitutionality of a state statute, the Court's "decision must be based largely on legislative, as opposed to adjudicative, facts." <u>Daggett v. Commission on Governmental Ethics and Election Practices</u>, 205 F.3d 445, 455 (1st Cir. 2000) ("<u>Daggett II</u>").  The Court may take notice of legislative facts, such as facts that relate to the justification for the statute, especially where the accuracy and authenticity of the records of legislative history are undisputed. <u>Id</u>. at 455-56 & n.9; <u>Greci v. Birknes</u>, 527 F.2d 956, 959 n.4 (1st Cir. 1976).

### B.    The Court Must Hold Plaintiffs to their Heavy Burden of Proving that the Act Is Unconstitutional on its Face.

Since plaintiffs "brought a facial attack on a content-neutral" statute (<u>see</u> pages 21-29, below), "it is plaintiff's burden to show that the law has no constitutional application." <u>Naser Jewelers</u>, 513 F.3d at 33 (re First Amendment challenge).  Content-neutral statutes "enjoy a presumption of constitutionality." <u>Id</u>.

"[A] party who mounts a facial challenge to a statute must carry a significantly heavier burden than one who seeks merely to sidetrack a particular

application of the law." <u>McGuire I</u>, 260 F.3d at 46-47. "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." <u>McGuire II</u>, 386 F.3d at 57 (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987)); <u>accord</u> <u>Pharmaceutical Care Management Ass'n v. Rowe</u>, 429 F.3d 294, 307 (1st Cir. 2005).

"In the First Amendment context, this means that a plaintiff who challenges a statute on its face ordinarily must show either [1] that the law admits of no valid application or [2] that, even if one or more valid application exists, the law's reach nevertheless is so elongated that it threatens to inhibit constitutionally protected speech." <u>McGuire I</u>, 260 F.3d at 47. "[T]he first kind of facial challenge will not succeed unless the court finds that 'every application of the statute created an impermissible risk of suppression of ideas,' . . . and the second kind of facial challenge will not succeed unless the statute is 'substantially' overbroad, which requires the court to find 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" <u>New York State Club Ass'n, Inc. v. City of New York</u>, 487 U.S. 1, 11 (1988) (quoting <u>City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 798 n.15 & 801 (1984)).

In the context of plaintiffs' due process and equal protection claims, only the first of these two avenues of facial attack is available; the Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." <u>Salerno</u>, 481 U.S. at 745. Thus, outside the First Amendment

context, "a facial challenge must fail where the statute has a 'plainly legitimate sweep.' " <u>Washington State Grange v. Washington State Republican Party</u>, 128 S.Ct. 1184, 1190 (2008) (quoting <u>Washington v. Glucksberg</u>, 521 U.S. 702, 739-740 and n.7 (1997) (Stevens, J., concurring in judgments)); <u>accord</u> <u>Crawford v. Marion County Elec. Bd.</u>, 128 S.Ct. 1610 (2008) (affirming rejection of facial challenge to Indiana's voter identification statute).

## II.    THE ACT IS A LAWFUL "TIME AND PLACE" REGULATION OF WHO IS ALLOWED NEAR CLINIC ENTRANCES DURING BUSINESS HOURS.

The revised Act is a lawful, content-neutral regulation of who is allowed, during business hours, immediately next to clinic entrances and driveways. "Reasonable restrictions as to the time, place, and manner of speech in public fora are permissible, provided that those restrictions [1] 'are justified without reference to the content of the regulated speech, . . . [2] are narrowly tailored to serve a significant governmental interest, and . . . [3] leave open ample alternative channels for communication of the information.'" <u>Bl(a)ck Tea</u>, 378 F.3d at 12 (quoting <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791 (1989)).  The revised Act meets these three requirements.

Plaintiffs' attempt to invoke "strict scrutiny" is misplaced.  <u>Cf</u>. Ps' Br. at 26-27, 46.  A content-neutral regulation of the time, place, or manner in which expressive activity may occur is not subject to strict scrutiny, but instead is evaluated under the three-prong <u>Ward</u> test.  <u>See</u> <u>Hill</u>, 530 U.S. at 731; <u>Madsen</u>, 512 U.S. at 764.  "This less taxing level of analysis — commonly called 'intermediate scrutiny' — makes sense because the very fact of content neutrality

offers a meaningful assurance that the government is not striving in a clandestine manner to steer public discourse or brainwash its citizens." McGuire I, 260 F.3d at 43.

The revised Act is assessed under Ward for the further reason that it is a law of general application. Hill, 530 U.S. at 731; Madsen, 512 U.S. at 764-65. Such a statute is subject to a less stringent standard of review than an injunction imposing buffer-zone restrictions only on certain individuals. If this appeal concerned an injunction aimed at specific protestors, then the Court would have to apply "a somewhat more stringent application of general First Amendment principles." Madsen, 512 U.S. at 765. That is because injunctions — which by their nature address "violations (or threatened violations) of a legislative or judicial decree" by particular individuals or entities — "carry greater risks of censorship and discriminatory application than do general ordinances." Id. at 764. Here, in contrast, "[i]t is precisely because the . . . Legislature made a general policy choice that the statute is assessed under the constitutional standard set forth in Ward, 491 U.S., at 791, rather than a more strict standard." Hill, 530 U.S. at 731.

### A. The Act Is Content Neutral and Viewpoint Neutral.

#### 1. The Revised Act Still Has a Content-Neutral Purpose and Is Content-Neutral on its Face.

The original Act was content neutral. McGuire II, 386 F.3d at 57-59; McGuire I, 260 F.3d at 43-45. The Legislature's 2007 revision to the physical area within which the Act may be applied does not undermine the content neutrality of the statute. Add. A at 31-43.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Hill, 530 U.S. at 719 (quoting Ward, 491 U.S. at 791). The revised Act is content neutral "for three independent reasons." Id.

"First, [the Act] is not a 'regulation of speech.' Rather it is a regulation of the places where . . . speech may occur." Id. The revised Act, like the buffer zone statute upheld in Hill, "does not 'ban' any messages, and likewise it does not 'ban' any signs, literature, or oral statements. It merely regulates the places where communications may occur." Hill, 530 U.S. at 731. Plaintiffs are free under the Act to engage in any kind of speech they wish, so long as they do not do so within a clearly marked and posted buffer zone during clinic business hours.

"Second, [the Act] was not adopted 'because of disagreement with the message it conveys.'" Hill, 530 U.S. at 719. To the contrary, the Act's "restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech." Id. (quoting Ward, 491 U.S. at 791). The Act does not target speech about abortion or by abortion opponents.

"Third, the [Commonwealth's] interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of the demonstrators' speech." Hill, 530 U.S. at 719-20. "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" Ward, 491 U.S. at 791 (emphasis in

original); accord Hill, 530 U.S. at 720; Madsen, 512 U.S. at 763.  "Just like the
Colorado statute in Hill, . . . the statute here has content-neutral purposes:
protecting safety and access to medical care."  McGuire II, 386 F.3d at 57.

This Court has emphasized the third of these points, explaining that "the
core inquiry for determining content neutrality is . . . whether the legislative reason
for the law is content neutral."  Id.  "As long as a regulation serves a legitimate
purpose unrelated to expressive content, it is deemed content-neutral, even if it has
an incidental effect on some speakers and not others."  McGuire I, 260 F.3d at 44.

The revised Act was passed "to preserve public safety by creating clearly
defined boundaries to improve the ability of safety officials to protect the public"
immediately adjacent to RHCF entrances and driveways.  A.22.  Plaintiffs' claim
that the Act as implemented at one clinic creates a public safety problem because a
portion of it ends in the middle of a side street is relevant, if at all, to their
as-applied challenge.  Cf. Ps' Br. at 20.  It does not negate the undisputed fact that
the Legislature's express intent in amending the Act was "the preservation of the
public safety."  A.43.  Thus, like the original Act, "the statute here has content-
neutral purposes."  McGuire II, 386 F.3d at 57.

Indeed, the revised Act meets the constitutional standard for content
neutrality even more easily than did the original Act upheld in McGuire and the
statute upheld in Hill (which was the model for the original Act).  The three Hill
dissenters argued that the Colorado statute was content-based because it did not
exclude all speakers from the buffer zone, but instead only constrained messages of
"protest, education, or counseling."  See Hill, 530 U.S. at 742-749 (Scalia, J.,

dissenting, with Thomas, J.), and at 765-770 (Kennedy, J., dissenting).  The <u>Hill</u> majority disagreed, holding that this did <u>not</u> mean the statute was a content-based regulation of speech.  <u>Hill</u>, 530 U.S. at 720-25.  While the original Act was modeled on the <u>Hill</u> statute, the revised Act substitutes a simpler buffer zone that excludes all non-exempt individuals from a clearly marked and posted buffer zone, without regard to whether they are engaged any particular kind of speech or communicative activity.  The concerns of the <u>Hill</u> dissenters regarding content neutrality thus do not apply here.

### 2.    The Fact that the Act Protects Small Areas Adjacent to Clinics Does Not Make It Content- or Viewpoint-Based.

There is no merit to plaintiffs' assertion that the revised Act is not content neutral because it does not apply "to all health care facilities," but instead "applies only to non-hospital RHCFs."  Ps' Br. at 21.  It was constitutionally permissible for the Legislature to restrict the revised buffer zone to the areas immediately adjacent to clinic entrances and driveways, since that is where the Legislature found that there was a continuing public safety problem.  "Just as targeting medical centers did not render Colorado's counterpart statute content-based, <u>Hill</u>, 530 U.S. at 722-23, so too the Act's targeting of RHCFs fails to undermine its status as a content-neutral regulation."  <u>McGuire I</u>, 260 F.3d at 44.

The Court has already rejected plaintiffs' assertions that, because the Act limits access only to areas immediately adjacent to RHCF entrances and driveways, it constitutes viewpoint discrimination and the content-neutral justifications for the Act are pretextual.  <u>McGuire II</u>, 386 F.3d at 57 (no viewpoint

discrimination); McGuire I, 260 F.3d at 44-45 (no pretext).  "[T]hat the statute in practice has a tendency to burden pro-life speech more than it burdens pro-choice [or other] speech [is] irrelevant to the statute's content (or viewpoint) neutrality." McGuire II, 386 F.3d at 57.  "[A] law designed to serve purposes unrelated to the content of protected speech is deemed content-neutral even if, incidentally, it has an adverse effect on certain messages while leaving others untouched." McGuire I, 260 F.3d at 43; accord Madsen, 512 U.S. at 763 (buffer zone injunction around clinic was content- and viewpoint-neutral even though it "covered people with a particular viewpoint").

>        **3.     The Exemption Allowing Clinic Employees To Be In the Zone When Acting Within the Scope of Their Employment Is Not Viewpoint Discrimination.**

The statutory exemption for "employees or agents of [the RHCF] acting within the scope of their employment," see Mass. G.L. c. 266, § 120E1/2(b)(2), does not undermine the content neutrality of the Act.  McGuire II, 386 F.3d at 58-59; McGuire I, 260 F.3d at 45-48.  This exemption was established in the original Act, and not changed by the 2007 amendment.  Plaintiffs' assertion that the exact same statutory exemption renders the Act unconstitutional on its face today is without merit.  Cf. Ps' Br. at 24-25, 44-48.

"[S]o long as a reviewing court can 'envision at least one legitimate reason for including the employee exemption in the Act,' the law is not facially unconstitutional."  McGuire II, 386 F.3d at 58 (quoting McGuire I, 260 F.3d at 47). There are "likely explanations for the exemption other than the desire to favor pro-abortion speech over anti-abortion speech:  'For example, the legislature may have

exempted clinic workers — just as it exempted police officers — in order to make crystal clear . . . that those who work to secure peaceful access to RHCFs need not fear prosecution.'" McGuire II, 386 F.3d at 58 (quoting McGuire I, 260 F.3d at 47). "For this reason . . . the viewpoint facial attack fails, now as then." McGuire II, 386 F.3d at 58.

There is no merit to Plaintiffs' claim that the exemption for RHCF employees and agents is unconstitutional because it is not needed under the revised Act. Cf. Ps' Br. at 21, 48. Clinics provide escorts to "assist in protecting patients and ensuring their safe passage as they approach RHCFs;" "since a primary purpose of the law is to facilitate safe access, the employee exemption serves the basic objectives of the Act." McGuire I, 260 F.3d at 46. Plaintiffs assert that this is no longer true, arguing that "the [buffer] zone itself secures the safety of clinic patients without any need for escorts." Ps' Br. at 48. But the Legislature was not required to assume that all protestors would always comply with the revised Act. Especially in light of the history of threatened and actual violence and intimidation in front of clinic entrances and driveways, the Legislature could lawfully conclude that patient safety warrants "a modicum of redundancy," under which patients are protected both by the buffer zone itself and by escorts who greet them near a clinic entrance. McGuire I, 260 F.3d at 47 (quoting Massachusetts Ass'n of HMOs v. Ruthardt, 194 F.3d 176, 181 (1st Cir. 1999)).

Nor is there any merit to plaintiffs' assertions that this statutory exemption allows clinic employees or agents to "express pro-choice viewpoints" within the buffer zone, and thereby "promotes a particular side of the abortion debate — the

pro-choice view." Ps' Br. at 47-48. To the contrary, Attorney General Coakley

has reiterated clear guidance — distributed to law enforcement personnel and to

clinics — that although this exemption "allows clinic personnel to assist in

protecting patients and ensuring their safe access to clinics," it "does not allow

them to express their views about abortion or to engage in any other partisan

speech within the buffer zone." A.196; Add. C at 3. This matches the guidance

provided by the Attorney General regarding the identical exemption in the original

Act. See McGuire II, 386 F.3d at 52 & n.1.

Reading this exemption so as not to allow employees to engage in partisan

speech within a buffer zone "is clearly a proper, content-neutral way of interpreting

the exemption." McGuire II, 386 F.3d at 64. The Attorney General's guidance

regarding the proper interpretation of the Act continues to be entitled to great

weight in determining whether the Act on its face is constitutional. Id. at 55, 58.

"In evaluating a facial challenge to a state law" on grounds of alleged vagueness or

overbreadth, "a federal court must, of course, consider any limiting construction

that a state court or enforcement agency has proffered." Village of Hoffman

Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n.5 (1982); accord,

e.g., McGuire II, 386 F.3d at 58. "Any inadequacy on the face of the [Act] would

have been more than remedied by the [Attorney General's] narrowing

construction." Ward, 491 U.S. at 796.

Finally, plaintiffs' argument regarding alleged behavior by some clinic

employees or agents (cf. Ps' Br. at 47) is relevant, if at all, only to plaintiffs' as

applied challenge; it is not relevant to their claim that the revised Act is

unconstitutional on its face.  McGuire II, 386 F.3d at 50-52, 57-58; McGuire I, 260

F.3d at 47-48.  Indeed, the alleged conduct of which plaintiffs complain may not

even be relevant to the as-applied challenge.  McGuire II, 386 F.3d at 60 ("To the

extent that the plaintiffs are claiming that the statute is unconstitutional as applied

merely because private pro-choice persons are engaging in acts that are illegal

under the statute, their claim has nothing to do with the statute at all and they

cannot bring it because there is no state action.")

### 4.    The Attorney General's Guidance Letters Do Not Undermine the Content-Neutrality of the Act.

There is no merit to plaintiffs' argument that Attorney General Coakley's

letters construing the exemptions in the Act render the statute as a whole content-

based.  See Ps' Br. at 24-25.  Indeed, this argument is foreclosed by McGuire II.

This Court observed that guidance letters issued by the Attorney General's

office in 2003 "clearly construed the [clinic employee and agent] exemption to

exclude pro-abortion or partisan speech from the term 'scope of their

employment," and held that "[t]he Attorney General's interpretation . . . is clearly a

proper, content-neutral way of interpreting the exemption."  McGuire II, 386 F.3d

at 52 n.1 & 64.

Neither the language of the statutory exemptions nor the Attorney General's

interpretation of the exemptions has changed since both were found to be content-

neutral.  In January 2008, the Attorney General's office issued guidance letters

once again explaining that the statutory exemptions do not permit anyone to enter a

buffer zone in order "to express their views about abortion or to engage in any

other partisan speech within the buffer zone." A.196; Add. C at 3. This guidance merely paraphrases the language quoted above from footnote 1 of the <u>McGuire II</u> opinion. Since this Court has held that such guidance is content-neutral as a matter of law, plaintiffs' claim that a reiteration of that guidance should be treated as content-based fails as a matter of law.

Plaintiffs' assertion that the Act "targets" abortion-related speech is unavailing. <u>Cf</u>. Ps' Br. at 26. What the revised Act does is exclude everyone from a clearly marked and posted buffer zone during a clinic's business hours, except for individuals who fall within one of the four statutory exemptions. The exemptions have been carefully construed by the Attorney General in a content-neutral manner, consistent with the First Circuit's <u>McGuire</u> decisions. The revised Act, like the original Act upheld in <u>McGuire I</u> and <u>McGuire II</u>, may have the effect of restricting the time and place of speech near clinic entrances and driveways, but that effect is content-neutral.

### B.    The Act Is Narrowly Tailored To Address the Commonwealth's Significant Interests in Protecting Public Safety and Clinic Access.

#### 1.    The Legislature Narrowly Tailored the Revised Buffer Zone To Solve Problems that Arose Under the Original Act.

The second prong of the <u>Ward</u> test is also met here. The revised Act "furthers conventional objectives of the state's police power — promoting public health, preserving personal security, and affording safe access to medical services." <u>McGuire I</u>, 260 F.3d at 44. It promotes "unimpeded access to health care facilities and the avoidance of potential trauma to patients associated with confrontational

protests." <u>Hill</u>, 530 U.S. at 715.  These significant governmental interests justify the Act's "specific application to RHCFs."  <u>McGuire I</u>, 260 F.3d at 44.

The revised Massachusetts buffer zone was narrowly tailored to serve those interests, just like the much larger buffer zone upheld in <u>Madsen</u>, 512 U.S. at 768-70.  That case involved an injunction barring protestors from being any closer than "36 feet of the <u>property line</u> of the clinic as a way of ensuring access to the clinic." <u>Id</u>. at 768 (emphasis added).  <u>Madsen</u> held that the buffer zone at issue there "burdens no more speech than necessary to accomplish the governmental interest" of protecting clinic access, and thus was narrowly tailored.  <u>Id</u>. at 770.  The buffer zone here, with a radius of 35 feet around clinic <u>entrances or driveways</u>, is substantially smaller and thus even more narrowly tailored.

There was ample basis for the Legislature's conclusion that revising the Massachusetts buffer zone would better protect public safety and ensure access to medical care at RHCFs.  The Legislature heard evidence, including eye-witness testimony by law enforcement officials and others, that under the original Act protestors regularly blocked access to RHCFs and threatened the safety of patients, staff, and others trying to enter those facilities.  <u>See</u> pages 7-10, above.  It learned that protestors would cluster and position themselves immediately in front of or next to clinic entrances and driveways, and from there would block clinic access and yell at patients and staff who were trying to obtain or provide medical care at a clinic.  A.170-77, 180-83, 226-27, 237-38.  Patients were scared and intimidated by their close-quarter confrontations with protestors.  A.170, 227, 237-38. Because the original Act allowed protestors to stand as close as they wished to

clinic entrances so long as they did not "approach" anyone without consent, it was very difficult for the police to keep patients safe and clinic entrances clear.  A.143-45, 172-77.  As the district court found:

> Despite the passage of the 2000 Act, the Commonwealth faced significant public safety problems in the areas adjacent to RHCF entrances and driveways, including serious concerns regarding safe patient access to medical services.  As a result, following an investigation, the Legislature reasonably concluded that the 2000 Act's floating buffer zone was insufficient, and determined that a 35-foot fixed buffer zone was immediately necessary to protect public safety and ensure patient access to clinics.

Add. A at 46.

The record belies plaintiffs' assertion that the evidence presented at the May 2007 legislative hearing was "stale."  Cf. Ps' Br. at 59-60; Add. A at 48-51.  In any case, the Legislature may "us[e] past experience to plan for future events," in determining whether the requirements of public safety weigh in favor of reasonable limitations on the time and place of public protest within traditional public fora.  Bl(a)ck Tea, 378 F.3d at 13; accord Hill, 530 U.S. at 728-29 (relying in part on past experience to find time-place-manner restrictions narrowly tailored); Ward, 491 U.S. at 796-97 (upholding restrictions enacted on the basis of earlier experiences with noise pollution in Central Park).  "The question is not whether the government may make use of past experience — it most assuredly can — but the degree to which inferences drawn from past experience are plausible."  Bl(a)ck Tea, 378 F.3d at 14.

The Legislature's conclusion that the revised Act was necessary to protect public safety and clinic access must be respected.  See McGuire I, 260 F.3d at 44-

46.  When evaluating whether a content-neutral statute is narrowly tailored to

further important governmental interests, the Court is "not at liberty to substitute

[its] judgment for the reasonable conclusion of a legislative body." Turner

Broadcasting System, Inc. v. F.C.C., 520 U.S. 180, 212 (1997).  It would be

"constitutionally unwarranted" for the Court to reject the Legislature's

conclusions, regarding the threat to public safety at clinic entrances, on the ground

that the Legislature's judgment was not supported by sufficient fact finding.  Id.,

520 U.S. at 213.  A Legislature "is not obligated, when enacting its statutes, to

make a record of the type that an administrative agency or court does to

accommodate judicial review." Id.

> ### 2.    The Buffer Zone Chosen by the Legislature Need Not Be the Least Restrictive or Smallest Possible Solution.

"[A] regulation of the time, place, or manner of protected speech must be

narrowly tailored to serve the government's legitimate, content-neutral interests

but . . . it need not be the least restrictive or least intrusive means of doing so."

Hill, 530 U.S. at 726 n.32 (quoting Ward, 491 U.S. at 798); accord Naser Jewelers,

513 F.3d at 34-35.  Plaintiffs' assertion that an 18-foot buffer zone would have

been sufficient to protect public safety, and that there was no need for the

Legislature to adopt a 35-foot zone, is irrelevant.  Cf. Ps' Br. at 20.  The

Commonwealth did not concede at trial "that the reach of the statute is

unnecessary."  Ps' Br. at 26.  Rather, the Commonwealth explained that, under the

governing Supreme Court precedent, the size of the buffer zone "was a permissible

choice for the Legislature to make."  A.301-303.

The Legislature's determination that the original Act proved insufficient to protect access to RHCFs, and that a fixed, 35-foot buffer zone around clinic entrances and driveways was needed to protect public safety and clinic access, is entitled to deference.  See Madsen, 512 U.S. at 769-70 (court's determination that narrower injunction had failed to protect clinic access, and that fixed 36-foot buffer around entire property line was needed instead, was entitled to deference and demonstrated that the buffer zone was narrowly tailored); Hill, 530 U.S. at 727 ("whether or not the 8-foot [buffer zone] interval is the best possible accommodation of the competing interests at stake, we must accord a measure of deference to the judgment of the Colorado Legislature").

The Court may not second-guess whether the evidence presented to the Legislature really warranted a smaller buffer zone (such as the 15-foot zone around clinic entrances upheld in Schenck), or a larger one (such as the 36-foot zone around an RHCF's entire property line upheld in Madsen).  "[T]he validity of time, place, or manner regulations is not subject to 'a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted.'"  Bl(a)ck Tea, 378 F.3d at 12 (quoting Ward, 491 U.S. at 800).  "[T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative."  Ward, 491 U.S. at 800; accord Burson, 504 U.S. at 210-11; Naser Jewelers, 513 F.3d at 35.

The Supreme Court has rejected as not of "constitutional dimension" the question whether a statutory buffer zone could have been smaller. Burson, 504 U.S. at 210-11. In Schenck, the Court said it should not "quibble about whether 15 feet is too great or too small a distance if the goal is to ensure access," and deferred to the district court's injunction around clinics entrances and driveways. Schenck, 519 U.S. at 381. Here, since we are dealing with a law of general application, the Legislature's judgment is entitled to even greater deference. Hill, 530 U.S. at 731; Madsen, 512 U.S. at 764-65.

The Act regulates conduct where public safety problems and frightening confrontations had been regularly observed under the prior version of the statute. Law enforcement officials urged the Legislature to adopt a 35-foot buffer zone in order to ensure public safety. Under these circumstances, the zone chosen by the Legislature is sufficiently narrowly tailored. See Burson, 504 U.S. at 210-11 (upholding 100-foot buffer zone around polling places established by statute); Madsen, 512 U.S. at 768-770 (upholding injunction with 36-foot buffer zone around RHCF property); Schenck, 519 U.S. at 381 (upholding injunction with 15-foot buffer zone around RHCF entrances and driveways).

### 3. Whether These Plaintiffs Are Law Abiding Is Not Relevant to Whether the Act Is Constitutional.

Plaintiffs' argument that the revised Act restricts previously lawful conduct, and that in recent years neither they nor others have been arrested for breaking the law while engaged in communicative activity outside a clinic, also misses the mark. Cf. Ps' Br. at 51-57. This case does not involve a request for injunctive

relief, which could only be granted to remedy unlawful behavior.  Rather, the Court is considering a facial challenge to a statute of general application.  The Massachusetts Legislature is generally free to pass laws restricting previously lawful conduct that threatens public health or safety, so long it does so in a constitutionally permissible way.  E.g., Prince v. Massachusetts, 321 U.S. 158 (1944) (affirming convictions for violating Massachusetts's child labor laws).  "The decision as to what measures are necessary for the preservation of life, health, and morals is in the first place a matter for the Legislature, and every presumption must be made in favor of the validity of statutes enacted to further those objectives."  Mile Road Corp. v. Boston, 345 Mass. 379, 382, 187 N.E.2d 826, 829 (1963) (upholding application of state statute prohibiting dumping of refuse or trash in an area of Boston).

The Legislature may enact a buffer zone that "takes a prophylactic approach" to protect patients from protestors in the immediate proximity of clinic entrances.  Hill, 530 U.S. at 729.  "Persons who are attempting to enter health care facilities — for any purpose — are often in particularly vulnerable physical and emotional conditions."  Id.  The Act's "prophylactic aspect is justified by the great difficulty of protecting, say, a pregnant woman from physical harassment with legal rules that focus exclusively on the individual impact of each instance of behavior."  Id.  "A bright-line prophylactic rule may be the best way to provide protection, and, at the same time, by offering clear guidance and avoiding subjectivity, to protect speech itself."  Id.

A fixed buffer zone need not be enforced only against particular individuals "with a history of bad conduct." Hill, 530 U.S. at 730. In Schenck, for example, the Court upheld a fixed 15-foot buffer zone around clinic entrances that applied to "all protestors." 519 U.S. at 381. It held that this was an appropriate response to a history of protestors hindering people trying to enter or leave various clinics. Id. at 380. The record in Schenck showed that clinic protestors used "aggressive techniques, with varying levels of belligerence," that included "getting very close to women entering the clinics and shouting in their faces; surrounding, crowding, and yelling at women entering the clinics;" and sometimes "remain[ing] in the doorways after the patients had entered the clinics, blocking others from entering and exiting." Id. at 363. Just as that record justified injunctive relief against all protestors, so here the Legislature could reasonably "conclude . . . that the only way to ensure access was to move all protesters away from the doorways" and driveways. Id., 519 U.S. at 381 (emphasis in original).

### 4. Whether Existing Laws Adequately Protected Public Safety and Clinic Access Was For the Legislature To Decide.

In McGuire I, this Court found "unconvincing" arguments by the plaintiffs that existing laws are sufficient to bar violent or threatening conduct, and that therefore a buffer zone statute that limits "peaceful discourse" could not be considered to be narrowly tailored. McGuire I, 260 F.3d at 48-49. Plaintiffs' similar arguments here are also unavailing. Cf. Ps' Br. at 28-29 & n.10. "A fundamental principle of legislation is that [a Legislature] is under no obligation to

wait until the entire harm occurs but may act to prevent it." Turner Broadcasting, 520 U.S. at 212.

The constitutional test of "narrow tailoring" does not require a Legislature to rely solely upon laws aimed at specific threatening behavior, such as assault and battery or knowingly obstructing entry to a health care facility, to remedy threats to public safety and clinic access from repeated conduct immediately outside of RHCF entrances and driveways. McGuire I, 260 F.3d at 48-49; accord Burson, 504 U.S. at 206-7; Heffron v. International Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 654 (1981). Other existing laws "deal with only the most blatant and specific attempts" to impede access to an RHCF. Burson, 504 U.S. at 207 (quoting Buckley v. Valeo, 424 U.S. 1, 28 (1976)). The Legislature could constitutionally enact a fixed buffer zone to prevent "undetected or less than blatant acts" that would nonetheless threaten public safety and unfairly burden patients who merely want to enter a clinic to obtain medical care. Id..

### C.    The Act Leaves Open Ample Alternative Channels of Communication.

#### 1.    The Act Places No Limit On Expressive Activity Outside Buffer Zones.

Finally, the revised Act also meets the third prong of the Ward test. Though the Act restricts who may enter a clearly marked and posted buffer zone, and thereby limits the time and place of speech near RHCF entrances and driveways, it leaves open ample alternative channels for communicating with people going to a clinic. Madsen held that an injunction against "congregating, picketing, patrolling,

- 37 -

demonstrating or entering" within 36 feet of a clinic's property line left open adequate means of communication, because protestors could still stand as close as "10 to 12 feet from cars approaching and leaving the clinic," and could "still be seen and heard from the clinic parking lots."  514 U.S. at 768, 770.  Here, the revised Act leaves open a far broader range of ways to communicate with plaintiffs' target audience.

The revised Act does not prohibit any manner of speech.  Plaintiffs may hold signs, pray, sing, or chant just outside of RHCFs, and may offer literature to, converse with, or call out to persons approaching or leaving clinics.  Individuals wishing to communicate with clinic patients or staff may engage in any kind of lawful speech they wish so long as, during a clinic's business hours, they do so from outside any clearly marked and posted buffer zone.  Plaintiffs and others may engage in expressive activity that can be seen and heard not only by people approaching the buffer zone, but also by people inside the zone.

Similarly, the revised Act does not prevent clinic patients or anyone else from obtaining information that they seek.  For example, anyone who wants to speak with or obtain literature from a protestor or counselor standing near a buffer zone may do so.  There is no basis for plaintiffs' assertion that the revised Act has taken away "the ability of an incoming patient to invite McCullen to give her information."  Ps' Br. at 6.  Anyone who wants to speak with plaintiffs may do so; the Act merely requires that such communications take place outside a clearly marked buffer zone.

It is constitutionally permissible to protect public safety with a limited buffer zone that excludes protestors, but allows for unfettered speech from outside the zone and thereby leaves open ample alternative means of communication.  <u>See</u> <u>Burson</u>, 504 U.S. at 210-11 (100-foot buffer zone around polling places); <u>Madsen</u>, 512 U.S. at 768-770 (36-foot buffer zone around RHCF property); <u>Schenck</u>, 519 U.S. at 374-376 (15-foot buffer zone around RHCF entrances and driveways); <u>Hill</u>, 530 U.S. 703 (100-foot buffer zone around RHCF entrances, within which approaches closer than 8 feet are barred absent consent); <u>McGuire I</u> and <u>McGuire II</u> (18-foot buffer zone around RHCF entrances, within which approaches closer than 6 feet were barred absent consent); <u>Bl(a)ck Tea</u>, 378 F.3d 8 (rules confining demonstrators wishing to be heard by 2004 Democratic National Convention delegates to a heavily secured "pen," surrounding by fencing and mesh fabric and placed beneath rail tracks); <u>Menotti v. Seattle</u>, 409 F.3d 1113, 1125, 1128-42 (9th Cir. 2005) (ordinance barring most persons from a very large part of the downtown during World Trade Organization meeting upheld as valid time, place, and manner regulation of speech in public fora).

The buffer zone at issue here is narrower than the zones previously upheld in <u>Madsen</u>, <u>Burson</u>, <u>Bl(a)ck Tea</u>, and <u>Menotti</u>.  It leaves open ample means for plaintiffs to express their views and communicate with others near clinics. Plaintiffs mistakenly cite <u>Hill</u> for the proposition that, under the First Amendment, buffer zones may only limit attempts to communicate with unwilling listeners. Ps' Br. at 7, 18-19, 37.  Given the nature of the Colorado statute, that was the issue in <u>Hill</u>.  But <u>Madsen</u>, <u>Schenck</u>, <u>Burson</u>, and <u>Bl(a)ck Tea</u> hold that an appropriately

tailored law may constitutionally bar protestors from approaching both willing and unwilling listeners inside a fixed buffer zone, where there is ample opportunity to communicate with willing listeners from outside the zone.

> **2.    Plaintiffs Have No Constitutional Right to Approach Within a Few Feet of All Strangers in All Locations.**

Plaintiffs' claim that they have an absolute right under the First Amendment to communicate with their intended audience from a normal conversational distance or to hand out leaflets in every public place (Ps' Br. at 30-33, 41) is foreclosed by this Court's holding that "there is no constitutional requirement that demonstrators be granted that sort of particularized access." Bl(a)ck Tea, 378 F.3d at 14. The Act permits plaintiffs to approach whomever they want, as closely as they want, outside the buffer zone. It similarly permits plaintiffs to invite clinic patients and others to approach them in order to receive pamphlets or converse. That they may not do so within the zone does not render the Act facially unconstitutional. Id. at 13-15.

By comparison, the much more expansive buffer zone imposed at the 2004 Democratic National Convention "allowed no opportunity for physical interaction (such as the distribution of leaflets) and severely curtailed any chance for one-on-one conversation." Id. at 13. Yet this Court upheld the security measures as a constitutional regulation of the time, place, and manner of speech. Id. at 13-15. "Although the opportunity to interact directly with the body of delegates by, say, moving among them and distributing literature, would doubtless have facilitated the demonstrators' ability to reach their intended audience, there is no

constitutional requirement that demonstrators be granted that sort of particularized access." Id. at 14.

"[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places…." Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 812 (1984) (upholding ordinance prohibiting posting of signs on public property); accord, e.g., Heffron, 452 U.S. at 647 ("the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired"). This Court "has upheld in other contexts alternative means of communication despite diminution in the quantity of speech, a ban on a preferred method of communication, and a reduction in the potential audience." Sullivan v. Augusta, 511 F.3d 16, 44 (1st Cir. 2007) (citations omitted). A statute "does not fail for lack of adequate alternatives so long as there are avenues for 'the general dissemination of a message.'" Id. (quoting Frisby v. Schultz, 487 U.S. 474, 483-84 (1988) (upholding ban on picketing in public forum before any particular residence)).

There is no merit to plaintiffs' argument that Schenck struck down a 15-foot floating buffer zone (not to be confused with the 15-foot fixed buffer zone upheld by the Court in the same decision) because that portion of the injunction did not permit communication from a normal conversational distance. Cf. Ps' Br. at 10, 31. It is true that the Court observed that the 15-foot floating buffer zone "prevent[ed] defendants . . . from communicating a message from a normal conversational distance or handing leaflets to people entering or leaving the clinics

who are walking on public sidewalks." <u>Schenck</u>, 519 U.S. at 377.  But the Court expressly declined to "decide whether the governmental interests involved would ever justify some sort of zone of separation between individuals entering the clinics and protesters, measured by the distance between the two." <u>Id</u>.  Instead, the Court held merely "that because this broad prohibition on speech 'floats', it cannot be sustained on this record," primarily because "it would be quite difficult for a protester who wishes to engage in peaceful expressive activities to know how to remain in compliance with the injunction." <u>Id</u>. 519 U.S. at 377-78.  The "floating" portion of the injunction required all protesters to stay at least 15 feet away from any person or vehicle seeking access to or leaving a clinic, no matter where in the world the person or vehicle was located. <u>Id</u>., 519 U.S. at 366 n.3.  In contrast, <u>Schenck</u> upheld a fixed 15-foot buffer zone restriction around clinic entrances and driveways, even though within its range it had the same effect on normal conversation and leafleting as the floating 15-foot buffer zone.  519 U.S. at 380-83.

The Supreme Court has repeatedly upheld fixed buffer zones that have the effect of limiting normal conversation or leafleting within the zone. <u>Burson</u>, 504 U.S. at 210-11 (100-foot buffer zone around polling places); <u>Madsen</u>, 512 U.S. at 768-770 (36-foot fixed buffer zone around RHCF property); <u>Schenck</u>, 519 U.S. at 374-376 (15-foot fixed buffer zone around RHCF entrances and driveways).

The revised Act allows for normal conversation and leafleting outside of any clearly marked and posted buffer zone.  At PPLM-Boston, for example, protestors continue to have close contact with patients and others approaching the clinic.  A.252.  Protestors at the Boston clinic still can and do walk down the sidewalk

with and try to hand literature to patients and others approaching the facility on foot, though they now stop at the edge of the marked buffer zone. A.124, 252-53. Similarly, at the RHCF in Brookline, protestors on the public sidewalk continue to call out to and ask to speak with people walking in the parking lot, and people in the parking lot not infrequently respond by walking toward the protestors, speaking with them, and taking their literature. A.188-89. The case law cited above establishes that there is no constitutional requirement that plaintiffs be allowed to engage in such behavior while standing inside a buffer zone that has been clearly marked and posted in accord with the revised Act.

Since the Act does not prohibit leafleting, normal conversation, or any other manner of speech, it is nothing like the complete ban on handbilling that was struck down in Martin v. Struthers, 319 U.S. 141 (1943), or the state law making it a felony to pay people to gather signatures on initiative petitions that was struck down in Meyer v. Grant, 486 U.S. 414 (1988). Cf. Brief of Amicus Curiae American Civil Liberties Union of Massachusetts, at 4, 9. The ACLU's "attempt to analogize" the revised Act "to a total ban on distribution of handbills is imaginative but misguided." Ward, 491 U.S. at 799 n.7.

In sum, the district court correctly held that the revised Act, on its face, is a reasonable, content-neutral, narrowly tailored restriction on the time and place of speech in public fora that leaves open ample alternative communications channels immediately outside RHCFs.

### III. PLAINTIFFS' OTHER FREE SPEECH CLAIMS ARE WITHOUT MERIT.

#### A. The Act Is Not Unconstitutionally Overbroad.

The Court need not separately address plaintiffs' claim that the revised Act is overbroad, "because it is analytically identical to" the claim that the Act "is on its face not narrowly tailored." Bryant v. Gates, 532 F.3d 888, 894 n.** (D.C. Cir. 2008); see also Board of Trustees of the State Univ. of New York v. Fox, 492 U.S. 469, 482-84 (1989) (the rule that a content-neutral statute regulating speech must be narrowly tailored "prevents a statute from being overbroad"). A time, place, or manner restriction on protected speech that satisfies the three-part Ward test — i.e., it is content-neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative means of communication — is not unconstitutionally overbroad. See Hill, 530 U.S. at 730-31; Menotti, 409 F.3d at 1128.

In any case, the Supreme Court has rejected an almost identical overbreadth challenge to a clinic buffer zone statute. See Hill, 530 U.S. at 730-32. Plaintiffs complain that under the revised Act "virtually all lawful conduct is banned" from marked buffer zones. Ps' Br. at 35-39. But this "comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive." Hill, 530 U.S. at 731. "The fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance. What is important is that all persons entering or leaving health care facilities share the interests served by the statute." Id. at 730-31. Since "[p]laintiffs have not established 'that the impact of the statute on the

- 44 -

conduct of other speakers will differ from its impact on their own sidewalk counseling,'" they failed to prove that the Act is overly broad.  Add. A at 59 (quoting Hill, 530 U.S. at 732).

"Invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.' " United States v. Williams, 128 S.Ct. 1830, 1838 (2008) (quoting Los Angeles Police Dept. v. United Reporting Publishing Corp., 528 U.S. 32, 39 (1999)).  "[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  Hill, 530 U.S. at 732 (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)).  To succeed on their overbreadth claim, plaintiffs bear "the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists."  Virginia v. Hicks, 539 U.S. 113, 122 (2003) (quoting New York State Club Ass'n, 487 U.S. at 14).  "This task presents a 'heavy burden' for the plaintiff."  Colorado Right To Life Committee, Inc. v. Coffman, 498 F.3d 1137, 1155 (10th Cir. 2007) (quoting McConnell v. FEC, 540 U.S. 93, 207 (2003)).  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  Williams, 128 S.Ct. at 1844 (quoting Taxpayers for Vincent, 466 U.S. at 800).

Contrary to plaintiffs' suggestion, the revised Act does not prohibit the sale of Girl Scout cookies or newspapers, open-air music or poetry, panhandling, or any other communicative activity.  Ps' Br. at 39.  The Act "does not 'ban' any messages" or expressive activity; "[i]t merely regulates the places where

communications may occur." <u>Hill</u>, 530 U.S. at 731.  <u>Board of Airport</u>

<u>Commissioners of the City of Los Angeles v. Jews for Jesus, Inc.</u>, 482 U.S. 569

(1987), is readily distinguishable.  <u>Cf</u>. Ps' Br. at 38-39.  There, the Court struck

down a resolution that barred all "First Amendment activities" within the Central

Terminal Area at Los Angeles International Airport.  That law was not narrowly

tailored to address significant government interests, and did not leave open

alternative channels of communication.  Here, in contrast, the revised Act is not

unconstitutionally overbroad for the same reasons that it passes muster under the

<u>Ward</u> test as a reasonable, narrowly tailored regulation of the time and place where

expressive activity may occur near clinic entrances.  The Supreme Court has

"noted a distinction between the type of focused picketing banned from the buffer

zone and the type of generally disseminated communication that cannot be

completely banned in public places." <u>Madsen</u>, 512 U.S. at 769. "Here the

picketing is directed primarily at patients and staff of the clinic." <u>Id</u>.  <u>Madsen</u> held

that "the 36-foot buffer zone around the clinic entrances and driveway burdens no

more speech than necessary to accomplish the governmental interest at stake." <u>Id</u>.

at 770.  The same is true here.

### B.    The Act Imposes No Prior Restraint on Speech.

The district court also correctly held that the revised Act is not an

unconstitutional "prior restraint" on speech.  <u>Cf</u>. Ps' Br. at 40-44; Add. A at 59-60.

Since the Commonwealth "has not sought to prevent speech, but, rather, to regulate

the place and [time] of its expression," the Act is not an unlawful "prior restraint."

Bl(a)ck Tea, 378 F.3d at 12; accord, e.g., Sullivan, 511 F.3d at 32 (parade permit ordinance not a "prior restraint").

"The Supreme Court has explicitly rejected attempts to analyze security-based time-place-manner restrictions as prior restraints, . . . and those cases are controlling here." Bl(a)ck Tea, 378 F.3d at 12 (citing Hill, 530 U.S. at 733-34; Schenck, 519 U.S. at 374 n. 6; Madsen, 512 U.S. at 763 n. 2). "If content-neutral prohibitions on speech at certain places were deemed prior restraints, the intermediate standard of review prescribed in the time-place-manner jurisprudence would be eviscerated." Id. "Here [plaintiffs] are not prevented from expressing their message in any one of several different ways; they are simply prohibited from expressing it within the . . . buffer zone." Hill, 512 U.S. at 763 n.2.

## IV. PLAINTIFFS' OTHER FACIAL CHALLENGES TO THE ACT'S EXEMPTIONS ARE ALSO WITHOUT MERIT.

### A. The "Employees or Agents" Exemption Does Not Violate Equal Protection.

Plaintiffs' equal protection claim adds nothing to their free speech claims. Cf. Ps' Br. at 46-48; Add. A at 64-65. This Court has already held that the Act's exemption for clinic employees and agents does not undermine the Act's content neutrality. McGuire II, 386 F.3d at 58-59; McGuire I, 260 F.3d at 45-48. For the same reason, as a matter of law the exemption does not violate equal protection.

"[W]here the state shows a satisfactory rationale for a content-neutral time, place, and manner regulation, that regulation necessarily passes the rational basis test employed under the Equal Protection Clause." McGuire I, 260 F.3d at 49-50.

"So it is here:  the Act passes muster under the Equal Protection Clause for the same reasons that it passes muster under the First Amendment."  <u>Id</u>. at 50.

Plaintiffs' assertion that the exemption for clinic employees is subject to strict scrutiny is incorrect.  <u>Cf</u>. Ps' Br. at 46.  Since (as shown above) the revised Act does not infringe any fundamental First Amendment right, and plaintiffs make no claim that it targets a suspect class, the Act "must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  <u>FCC v. Beach Communications, Inc.</u>, 508 U.S. 307, 313 (1993); <u>accord</u> <u>Berger v. Seattle</u>, 512 F.3d 582, 606-7 (9th Cir. 2008); <u>Graf v. Chicago</u>, 9 F.3d 1309, 1325-26 (7th Cir. 1993).

### B.    The Exemptions as Construed by the Attorney General Do Not Render the Act Unconstitutionally Vague.

The district court correctly found that the Act is not unconstitutionally vague on its face.  Add. A at 67-71.  To prevail on this due process claim, plaintiffs would have to show that the Act as a whole (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement."  <u>Hill</u>, 530 U.S. at 732.  "[T]he Due Process Clause of the Fourteenth Amendment 'requires that statutes or regulations be sufficiently specific to provide fair notice of what they proscribe.'"  <u>Kittery Motorcycle, Inc. v. Rowe</u>, 320 F.3d 42, 50 (1st Cir. 2003) (quoting <u>Brasslett v. Cota</u>, 761 F.2d 827, 838 (1st Cir. 1985)).  The Act meets that standard.  When the Act "is read as a whole," the meaning of the statutory exemptions is sufficiently clear.  <u>Schenck</u>, 519 U.S. at 383 (term

- 48 -

"demonstrating" not vague when buffer zone injunction was read as a whole); see also Hill, 530 U.S. at 732 (undefined terms "protest, education, or counseling," "consent," and "approaching" did not make buffer zone statute unconstitutionally vague). "The mere fact that a statute or regulation requires interpretation does not render it unconstitutionally vague." United States v. Lachman, 387 F.3d 42, 56 (1st Cir. 2004).

Plaintiffs argue that "[t]he Attorney General's guidance letter introduces a new essential term that is vague and ambiguous — 'partisan speech.'" Ps' Br. at 49. The term that plaintiffs claim to find ambiguous comes directly from this Court's decision in McGuire II. In discussing the Attorney General's guidance regarding the exemption in the original Act for clinic employees or agents, the Court observed that "the Attorney General has clearly construed the exemption to exclude pro-abortion or partisan speech from the term 'scope of their employment.'" McGuire II, 386 F.3d at 52 n.1. When she provided similar guidance regarding the exemptions after other provisions in the Act were revised in 2007, the Attorney General echoed this Court's wording and made clear that the various exemptions did not allow covered individuals "to express their views about abortion or to engage in any other partisan speech in the buffer zone." Add. C at 3-4; A.196. Construing the exemptions in this way helps ensure that the Act as a whole is content neutral. McGuire II, 386 F.3d at 64.

A statute that limits "partisan" activity is sufficiently precise to survive a facial challenge on the ground of vagueness, even though "there may be disputes over the meaning" of that term. Broadrick, 413 U.S. at 608-10 (upholding law that

barred classified state employees from being an officer or member of a "partisan political club").  "[E]ven if the outermost boundaries of [a statute] may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much."  Id. at 608.  Plaintiffs say they "commenced the present suit to challenge a statute that prevents [them] from expressing [their] views on abortion" immediately next to RHCF entrances and driveways.  Ps' Br. at 33.  The Attorney General construed the exemption for persons crossing through a buffer zone to reach a destination other than the clinic as not permitting such individuals to "express[] their views about abortion or engage in other partisan speech" within the zone.  Add. C at 4.  There can be no doubt that this exemption, as so construed, does not allow plaintiffs to enter a buffer zone in order to express their views about abortion.  Thus, plaintiffs' assertion that it is unclear whether the Act would apply in other circumstances, cf. Ps' Br. at 49, provides no basis for striking down the Act on its face.  Broadrick, 413 U.S. at 608-9.  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  Parker v. Levy, 417 U.S. 733, 756 (1974).

A criminal statute is not unduly vague merely because "imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question."  Hill, 530 U.S. at 733 (quoting American Communications Ass'n v. Douds, 339 U.S. 382, 412 (1950)).  Plaintiffs muse about whether the statutory exemptions would allow speech showing favoritism to the Red Sox, or other causes not at issue in this case.  But "speculation about possible vagueness in

hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" Hill, 530 U.S. at 733 (quoting United States v. Raines, 362 U.S. 17, 23 (1960)); accord, e.g., Washington State Grange, 128 S.Ct. at 1191 ("In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases.").

Similarly, the mere fact that "enforcement requires the exercise of some degree of police judgment" does not mean that a criminal statute is unconstitutionally vague. Hill, 530 U.S. at 733 (quoting Grayned v. Rockford, 408 U.S. 104, 114 (1972)). "[B]ecause we are '[c]ondemned to the use of words, we can never expect mathematical certainty from our language.'" Id. (quoting Grayned at 110). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Ward, 491 U.S. at 794.

## Conclusion.

For the reasons stated, the Court should hold that the Act is constitutional on its face, and affirm the district court's order.

MARTHA COAKLEY

*ATTORNEY GENERAL OF MASSACHUSETTS*

_____

Kenneth W. Salinger, *Assistant Attorney General*
   Administrative Law Division
   First Circuit Bar No. 24380
Anna-Marie Tabor, *Assistant Attorney General*
   Civil Rights Division
   First Circuit Bar No. 1132893
One Ashburton Place
Boston, MA  02108
617.963.2075
ken.salinger@state.ma.us

February 25, 2009

Certificate of Compliance with FRAP 32(a)

I hereby certify that:

   1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains exactly 14,000 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

   2.  This brief complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface using MS-Word 2003 in 14-point Times New Roman.

_____

Certificate of Filing and Service

I hereby certify that on February 25, 2009:

   1.  nine paper copies and one electronic copy of this brief (in portable document format) were sent by first class mail to the court; and

   2.  two copies of this brief were served by first class mail on each of the following:  Michael DePrimo, Esq., 778 Choate Avenue, Hamden, CT 06518 (appellants' counsel); Dwight G. Duncan, Esq., 333 Faunce Corner Road, North Dartmouth, MA  02747-1252 (counsel for amicae curiae Marlynda Augelli, et al.); and Robert E. McDonnell, Esq., Bingham McCutchen LLP, One Federal Street, Boston, MA 02110 (counsel for amicus curiae American Civil Liberties Union).

_____

**Statutory Addendum.**

**Page**

G.L. c. 266, § 120E1/2
    (as amended November 13, 2007).................................Statutory Addendum 1

G.L. c. 266, § 120E 1/2, ¶ (b)
    (as in effect prior to November 13, 2007)....................Statutory Addendum 3

**Statutory Addendum**

**G.L. c. 266, § 120E1/2 (as amended November 13, 2007)**

(a) For the purposes of this section, "reproductive health care facility" means a place, other than within or upon the grounds of a hospital, where abortions are offered or performed.

(b) No person shall knowingly enter or remain on a public way or sidewalk adjacent to a reproductive health care facility within a radius of 35 feet of any portion of an entrance, exit or driveway of a reproductive health care facility or within the area within a rectangle created by extending the outside boundaries of any entrance, exit or driveway of a reproductive health care facility in straight lines to the point where such lines intersect the sideline of the street in front of such entrance, exit or driveway.  This subsection shall not apply to the following:--

 (1) persons entering or leaving such facility;

 (2) employees or agents of such facility acting within the scope of their employment;

 (3) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and

 (4) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.

(c) The provisions of subsection (b) shall only take effect during a facility's business hours and if the area contained within the radius and rectangle described in said subsection (b) is clearly marked and posted.

(d) Whoever knowingly violates this section shall be punished, for the first offense, by a fine of not more than $500 or not more than three months in a jail or house of correction, or by both such fine and imprisonment, and for each subsequent offense, by a fine of not less than $500 and not more than $5,000 or not more than two and one-half years in a jail or house of correction, or both such fine and imprisonment.  A person who knowingly violates this section may be arrested without a warrant by a sheriff, deputy sheriff or police officer if that sheriff, deputy sheriff, or police officer observes that person violating this section.

(e) Any person who knowingly obstructs, detains, hinders, impedes or blocks another person's entry to or exit from a reproductive health care facility shall be punished, for the first offense, by a fine of not more than $500 or not more than three months in a jail or house of correction, or by both such fine and imprisonment, and for each subsequent offense, by a fine of not less than $500 nor more than $5,000 or not more than two and one-half years in a jail or house of correction, or by both such fine and imprisonment.  A person who knowingly violates this provision may be arrested without a warrant by a sheriff, deputy sheriff or police officer.

(f) A reproductive health care facility or a person whose rights to provide or obtain reproductive health care services have been violated or interfered with by a violation of this section or any person whose rights to express their views, assemble or pray near a reproductive health care facility have been violated or interfered with may commence a civil action for equitable relief.  The civil action shall be commenced either in the superior court for the county in which the conduct complained of occurred, or in the superior court for the county in which any person or entity complained of resides or has a principal place of business.

Statutory Addendum 2

**G.L. c. 266, § 120E 1/2, ¶ (b) (as in effect prior to November 13, 2007)**

(b) No person shall knowingly approach another person or occupied motor vehicle within six feet of such person or vehicle, unless such other person or occupant of the vehicle consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education or counseling with such other person in the public way or sidewalk area within a radius of 18 feet from any entrance door or driveway to a reproductive health care facility or within the area within a rectangle not greater than six feet in width created by extending the outside boundaries of any entrance door or driveway to a reproductive health care facility at a right angle and in straight lines to the point where such lines intersect the sideline of the street in front of such entrance door or driveway.  This subsection shall not apply to the following:--

(1) persons entering or leaving such facility;

(2) employees or agents of such facility acting within the scope of their employment;

(3) law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment; and

(4) persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility.

Statutory Addendum 3