APPEAL NO. 08-2310

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

ELEANOR MCCULLEN, JEAN BLACKBURN ZARELLA,
CARMEL FARRELL, ERIC CADEN, AND GREGORY A. SMITH,
*Plaintiffs-Appellants*,

v.

MARTHA COAKLEY, Attorney General
for the Commonwealth of Massachusetts,
*Defendant-Appellee*.

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CIVIL CASE NO. 08-10066-JLT
(HONORABLE JOSEPH L. TAURO)

———————

**APPELLANTS' PETITION FOR REHEARING OR, IN THE
ALTERNATIVE, REHEARING EN BANC**

———————

Michael J. DePrimo, Bar #74378
Attorney at Law
P.O. Drawer 2440
107 Parkgate Drive
Tupelo, Mississippi 38803
Telephone: (662) 491-2000
Email: michaeldeprimo@gmail.com

Philip D. Moran, Bar #23517
Philip D. Moran P.C.
265 Essex Street, Suite 202
Salem, Massachusetts 01970
Telephone: (978) 745-6085
Facsimile: (978) 741-2572
Email: philipmoranesq@aol.com

Benjamin W. Bull, Bar #1132885
Alliance Defense Fund
15100 North 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

I.   PLAINTIFFS DID NOT WAIVE THEIR CHALLENGES BASED ON THE ACT'S CRIMINALIZATION OF SPEECH RELATED TO "ABORTION OR PARTISAN" ISSUES ...................................... 3

    A.   The Panel Opinion ................................................................. 3

    B.   No Waiver Occurred ............................................................. 4

    C.   The Act Is Unconstitutionally Overbroad ........................... 7

II.  THE PANEL MISAPPLIED *HILL V. COLORADO* ...................... 9

    A.   *Hill* Does Not Permit Differential Treatment of Speakers ............ 9

    B.   The Panel Did Not Address *Hill*'s Distinction Between Willing and Unwilling Listeners ........................................ 12

CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Bischoff v. Florida*,
   242 F. Supp. 2d 1226 (M.D. Fla., 2003) ........................................................ 6

*Bryant v. Gates*,
   532 F.3d 888 (D.C. Cir. 2008) ...................................................................... 6

*Burk v. Augusta-Richmond County*,
   365 F.3d 1247, 1251 (11th Cir. 2004) ......................................................... 12

*Consol. Edison Co. v. Pub. Serv. Comm'n*,
   447 U.S. 530, 533 (1980) ...................................................................... 11, 12

*Hall v. Bd. of Sch. Comm'rs*,
   681 F.2d 965 (5th Cir. 1982) ...................................................................... 12

*Hill v. Colorado*,
   530 U.S. 703 (2000) ................................................................ 2, 9, 10, 12, 13

*Krantz v. City of Fort Smith*,
   160 F.3d 1214 (8th Cir. 1998) ..................................................................... 6

*Madsen v. Women's Health Center, Inc.*,
   512 U.S. 753 (1994) ................................................................................... 13

*McCullen v. Coakley*,
   No. 08-2310, 2009 WL 1942069 (1st Cir. July 8, 2009) ........ 3, 4, 5, 9, 11, 13

*McCullen v. Coakley*,
   573 F. Supp. 2d 382 (D. Mass. 2008) ........................................................... 1

*McGuire v. Reilly*,
   386 F.3d 45 (1st Cir. 2004) ......................................................................... 2

*McGuire v. Reilly*,
   260 F.3d 36 (1st Cir. 2001) ..................................................................... 2, 9

*Nat'l Treasury Employees Union v. U.S.,*
   990 F.2d 1271 (D.C. Cir. 1993) ........................................................................ 6

*Schenck v. Pro-Choice Network of Western New York, Inc.,*
   519 U.S. 357 (1997) ....................................................................................... 13

*Singleton v. Wulff,*
   428 U.S. 106 (1976) ......................................................................................... 7

*United States v. Zannino,*
   895 F.2d 1 (1st Cir. 1990) ................................................................................. 5

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ....................................................................................... 11

iii

**INTRODUCTION**

This is a case of exceptional importance concerning the power of the State to outlaw speech, based solely on its content, on certain public sidewalks in Massachusetts. Plaintiffs-Appellants hereby respectfully petition for rehearing or, in the alternative, rehearing en banc, for two reasons.

First, the panel mistakenly believed that Plaintiffs had waived their argument that the buffer zone law's criminal restriction on "abortion or partisan" speech rendered the statute unconstitutionally overbroad. That argument was not waived. As the State has candidly admitted throughout the case, the Act outlaws the wearing of political t-shirts, the wearing of Red Sox hats, and the discussing of politics by speakers who happen to be walking down certain public sidewalks in Massachusetts. This issue was repeatedly raised in Plaintiffs' briefs, was expressly found by the district court as an accurate description of the Act's reach[1], and was carefully probed by the Court during argument. This Court should squarely address whether such astounding and content-based breadth—when repeatedly admitted and endorsed by the State and the court below—can survive scrutiny. There is no support for the panel's initial finding of waiver.

---

[1] *See McCullen v. Coakley*, 573 F. Supp. 2d 382, 423 (D. Mass. 2008) ("[T]he Attorney General's guidance is clear. . . . [D]isplaying signs or shirts with abortion-related or partisan messages clearly qualifies . . . As such, the Attorney General's interpretation specifically prohibits this type of conduct.")

<u>Second</u>, this is a case of first impression in the federal courts of appeal that tests *a law of general application* creating a 35-foot fixed buffer zone around abortion clinics—a zone far larger and more burdensome than any other of its type. It is of exceptional importance to First Amendment rights because the panel incorrectly applied *Hill v. Colorado,* 530 U.S. 703 (2000) in upholding the statute. Relying on *McGuire v. Reilly*, 260 F.3d 36 (1st Cir. 2001) ("*McGuire I*") and 386 F.3d 45 (1st Cir. 2004) ("*McGuire II*"), the Court applied a rational basis test to determine content neutrality, deeming the law neutral if it could "envision" or "glean" a neutral reason for it. *Hill's* content analysis requires more, namely, equal application to all speakers. In this regard, the Act clearly fails. On the face of the law, speakers affiliated with abortion clinics are permitted to speak freely on the public sidewalks in favor of abortion, while Plaintiffs can be imprisoned for opposing them on the same area of public sidewalk. The anomalous use of a rational basis test for determining content neutrality established by this and the *McGuire* cases will have grave consequences far beyond the abortion debate. The anomaly also places the First Circuit at odds with Supreme Court precedent.

The Court also failed to apply—or even clearly address—the distinction between speech to willing and unwilling listeners that was at the heart of the *Hill* decision. Although the Supreme Court went to great lengths to limit its holding in *Hill* to regulations of speech toward *unwilling* listeners, the Court simply assumed,

without discussion, that the same rules apply for speech to willing listeners in the zone. The Supreme Court emphasized that there was a "significant difference" between such listeners, and this Court should at least address that issue and explain its reasoning.

For these reasons, Plaintiffs respectfully request rehearing, either by the original panel or by the Court en banc.

## I.    PLAINTIFFS DID NOT WAIVE THEIR CHALLENGES BASED ON THE ACT'S CRIMINALIZATION OF SPEECH RELATED TO "ABORTION OR PARTISAN" ISSUES.

### A.    The Panel Opinion.

The panel found that Plaintiffs had waived their argument that the Act was facially overbroad because it prohibited even passersby walking down the sidewalk from wearing political or sports-related clothing that could be considered "partisan." In particular, the panel found:

> At oral argument in this court, the plaintiffs essayed a new and different spin on overbreadth—*a perspective that emerged during the panel's questioning*. Seizing upon this perspective, the plaintiffs suggested that the Attorney General's guidance letter might be read to criminalize the conduct of anyone who engages in any "partisan speech," whether or not abortion-related, while passing though the buffer zone. ***This interpretation raises the concern that an individual could be prosecuted merely for passing through the buffer zone en route to a destination outside the zone while, say, wearing a lapel pin advocating the election of a political candidate or a T-shirt exhorting a favorite baseball team.***

> ***Though interesting, this argument is untimely.*** It was not raised either in the district court or in the plaintiffs' briefs on appeal. (footnote 3). It is, therefore, waived. *See United States v. Slade*, 980 3 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."); *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 397 (1st Cir. 1990) (holding that an appellant's briefs fix the scope of the issues appealed and that, therefore, an appellant cannot breathe life into an omitted theory merely by referring to it at oral argument). That the court inquired about the theory at oral argument does not lower this bar.

> Footnote 3:    To be sure, the plaintiffs' general overbreadth argument implicitly attacks the exceptions to the 2007 Act. But avoiding waiver requires more than a hint that a particular theory may be lurking; it necessitates some developed argumentation addressed to that particular theory. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

*McCullen v. Coakley*, No. 08-2310, 2009 WL 1942069, at *11-12 (1st Cir. July 8, 2009) (emphasis added).

## B.    No Waiver Occurred.

There is no basis for a finding of waiver.  Plaintiffs have argued throughout the case that the Act is substantially overbroad both in general and in the particular manner discussed by the Court.

For example, Plaintiffs' opening brief plainly made the exact overbreadth argument the panel believed was waived:

"    **D.    The Act Is Substantially Overbroad.**

*             *             *

**2. The Act Sweeps Within Its Ambit a Large Amount of Constitutionally Protected Conduct.**

*             *             *

4

> Here, the Commonwealth excluded *all* communicative activity from the zone as well as a host of other constitutionally-protected conduct. But, unlike *Hill*, most of these activities do not fall within the statute's legitimate sweep. For example, unobtrusive sign display, leafletting, oral communications, or prayer that do not block, impede, or harass, do not fall within the statute's legitimate sweep. ***Neither does the mere wearing of buttons, t-shirts, or caps with abortion or partisan messages.***"

Appellants' Opening Brief ("Op. Br.") at 34-38 (emphasis added).

Thus, the argument that the Act outlaws "wearing a lapel pin advocating the election of a political candidate or a T-shirt exhorting a favorite baseball team" simply is not something that arose for the first time at argument. Rather, that precise argument was expressly included in Plaintiffs' opening brief. Moreover, this was not merely a "hint that a particular theory may be lurking," *McCullen*, 2009 WL 1942069, at *14 n.3—it was part of a well-developed, six-page discussion of why the law is facially overbroad and unconstitutional. *See* Op. Br. at 34-40. Only "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (citation omitted).

Plaintiffs' other briefs in this court and at the district court confirm that Plaintiffs have always attacked the overbreadth of the Act and its application to "partisan" speech. For example, Plaintiffs' Reply Brief in this Court argued: "***prohibiting passers-by from even wearing t-shirts with pro-life messages—or for that matter 'Barack Obama for President'—while they walk a 70-foot stretch***

*of sidewalk obviously bears no relation to these alleged interests*." Reply Br. at

14 (emphasis added).[2]   Plaintiffs' memorandum in support of preliminary

injunction in the district court argued the same point:

> [T]he Act bans all sorts of non-obtrusive expressive activity and even
> constitutionally protected liberty interests. For example, the Act prohibits a
> solitary person from standing stationary in the zone while quietly displaying
> a sign or handing out literature. *It prohibits a solitary person who is
> wearing a t-shirt that contains a political or religious message from
> unobtrusively walking back and forth or even standing on the public
> sidewalk inside the zone . . .*   There simply is no rational basis, let alone
> substantial government interest, in prohibiting such innocent and inoffensive
> conduct.

Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction

("Motion) at 28 (emphasis added).[3]   For these reasons, there is no support for the

panel's finding of waiver.

---

[2] While the reply brief discussion dealt with this issue in the "narrow tailoring"
section, the State has taken the position in this case that an overbreadth claim "'is
analytically identical to" a claim that the Act "is on its face not narrowly tailored.'"
Appellee Brief at 44 (quoting *Bryant v. Gates*, 532 F.3d 888, 894 n.** (D.C. Cir.
2008)); *see also Nat'l Treasury Employees Union v. U.S.*, 990 F.2d 1271, 1274
(D.C. Cir. 1993) (noting that Supreme Court has at times treated overbreadth and
the absence of "narrow tailoring" and "more or less interchangeably"), *reversed in
part on other grounds*, 513 U.S. 454 (1995); *Krantz v. City of Fort Smith,* 160
F.3d 1214, 1218-22 (8th Cir. 1998) (applying time, place, and manner neutrality
test for overbreadth analysis);  *Bischoff v. Florida*, 242 F. Supp. 2d 1226, 1246
(M.D. Fla., 2003).

[3] Similar attacks on the breadth of the statute appear in Plaintiffs' other district
court filings, as well as the transcript of the bench trial. *See, e.g.*, Motion at 32-35;
Trial Tr. at 78.

6

Moreover, even if, *arguendo*, Plaintiffs' waived the precise legal theory identified by the panel at oral argument, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). This case affects not only Plaintiffs, but also the thousands of persons who daily discuss partisan matters while walking on the public sidewalks of Massachusetts. Their rights should not be ignored where, as here, the parties and district court clearly understand the Act (both as drafted and with the Attorney General's guidance) to impact their most basic freedoms guaranteed by the Bill of Rights. Thus, even if waiver occurred—which it did not—the panel or en banc court should exercise discretion and squarely decide whether the buffer statute is substantially overbroad in violation of the First and Fourteenth Amendments.

## C.    The Act Is Unconstitutionally Overbroad.

Once the Court considers the reach of the Act as interpreted and enforced by the State, its unconstitutional overbreadth is clear. The "plainly legitimate sweep" of the Act, if any, concerns the alleged interference and intimidation at abortion clinics (though not a single person has *ever* been convicted of violating the no-

approach zone upheld in *McGuire*).[4] Here, there can be little doubt that the reach of the Act far exceeds the interests asserted by the State. The many people who pass down public streets (including Boston's busy Commonwealth Avenue) talking with one another about "partisan" issues, or wearing "partisan" hats or shirts obviously have nothing to do with the State's asserted interests. As suggested by the Court at argument, there is no reason to outlaw the wearing of a Cleveland Indians shirt, the singing of "We Shall Overcome" by civil rights leaders walking to an event elsewhere, or an ongoing discussion between friends about Supreme Court nominees.[5] There was absolutely no evidence before the legislature or the court that such activities threaten any legitimate state interest. This substantial overbreadth requires invalidation of the Act.[6]

---

[4] Throughout its brief, the Commonwealth made abundantly clear that the alleged evil sought to be remedied is caused by abortion-related protest activity—and abortion-related protest activity *only*. *See* Appellees Brief at 1, 3-5, 7-9, 15, 23, 29-30, 34.

[5] When pressed during questioning at oral argument, the State expressly admitted that the statute itself (i.e., without the Attorney General's "guidance") forbids this type of unassuming and peaceful conduct, such that wearers of Indians shirts and singers of "We Shall Overcome," while permitted to walk through the zone, could be arrested for their speech.

[6] Nor should the Court wait for an "as applied" challenge. Overbreadth challenges, by their nature, request facial relief—namely, invalidation of the regulations at issue. Here, the legal regime in place is clear and undisputed by the State. There is no reason to turn a blind eye to the State's expressly content-based restriction on speech in the public forum when challenged in the overbreadth context, as the very point of overbreadth challenges is to protect the public from overreaching government action.

8

## II.    The Panel Misapplied *Hill v. Colorado.*

The panel misapplied *Hill* in two ways.  First, the panel essentially used a rational basis test to determine content neutrality and ignored *Hill*'s express focus on the need for application to all speakers as part of its content analysis.  Second, the panel did not address *Hill*'s critical distinction between restrictions on speech to unwilling listeners (such as those in *Hill* and *McGuire*) and restrictions on speech to willing listeners.

### A.    *Hill* Does Not Permit Differential Treatment of Speakers.

The panel stated that it would deem a law neutral so long as it could "glean" any legitimate reason for its action.  *McCullen*, 2009 WL 1942069, at *7 (citing *McGuire I*, 260 F.3d at 47 ["because we can envision at least one legitimate reason for including the employee exemption in the Act."]).[7]

---

[7] Notably, the "neutral" reason envisioned in *McGuire* was that "the legislature may have exempted clinic workers . . . in order to make crystal clear what already was implicit in the Act: that those who work to secure peaceful access to RHCFs need not fear prosecution." *McGuire I*, 260 F.3d at 47.  This reason is simply not neutral.  The legislature does not act *neutrally* if it decides that speakers may use a certain portion of the sidewalk to offer access to clinics, but not to peacefully offer someone access to information about alternative sources of help and support.  This is precisely why the Supreme Court in *Hill* made clear that the Colorado statute was neutral because it treated speech by all persons identically: "The statute is not limited to those who oppose abortion . . . It applies . . . to all "counseling" . . . whether [the speakers] oppose or support the woman who has made an abortion decision.  That is the level of neutrality that the Constitution demands." *Hill*, 530 U.S. at 725.  In this regard, *McGuire I* should be revisited and corrected to be in line with *Hill*.

There is no precedent for turning the neutrality inquiry into a rational basis test, even in a facial challenge. No Supreme Court decision has endorsed a lower neutrality standard at the facial challenge stage than at the as applied stage. Indeed, *Hill v. Colorado* was a facial challenge, 530 U.S. at 708, yet the Court did not at all suggest any lower standard for neutrality. In *Hill*, the Court's content-neutrality holding was ***expressly*** based on the fact that the law applied to ***all*** speakers, "regardless of viewpoint." *Id.* at 719. Moreover, the Court in *Hill* expressly found that the standard of review was relaxed *because* the regulation applied at *all* health care facilities (where all incoming patients share the same interests) rather than just where abortions occur. *See Id.* at 731 (*Ward* standard, "rather than a more strict standard" applies "precisely because" of this "general policy choice"). The Court did not say that, so long as the legislature offered a neutral reason—or the court could envision or glean one—it could create speech restrictions for some private speakers but not others, or could protect patients from peaceful speech only when and where abortions occur.

On its face, the Act permits employees and agents of the clinic to engage in absolutely any speech they wish to on the public sidewalk within the zone, while Plaintiffs can be imprisoned for opposing that speech in the same place. Thus the law does not apply equally to "all speakers" and does not apply "regardless of viewpoint" as required by *Hill*. Rather, it targets speech related to abortion, and

10

then exempts a highly partisan group of speakers based *entirely* on their affiliation with abortion clinics.

Nor can this defect be remedied by reference to the Attorney General's interpretation[8]—that interpretation *expressly and admittedly* purports to criminalize clinic agent speech if it is about "abortion" or another "partisan" topic, but not about nonpartisan topics. This is the essence of a content-based restriction. The First Amendment does not permit such regulation; and the Supreme Court's decisions do not permit this Court to characterize them as "content-neutral." *See Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 533 (1980) (holding content-based a regulation that barred utility company bill inserts expressing

---

[8] Plaintiffs note that the Court, relying on *McGuire II*, stated that the State's interpretation cannot render a facially valid statute facially invalid. *McCullen*, 2009 WL 1942069, at *7. *McGuire II* is incorrect in this regard and should be overruled. As the Supreme Court unequivocally stated in *Ward*, "in evaluating a facial challenge to a state law, a federal court *must* . . . consider any limiting construction that a state court or enforcement agency has proffered." *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989). The *Ward* rule makes sense—the purpose of granting a facial challenge, particularly to an overbroad statute, is to protect the public from unconstitutional government action. Whether the government creates that constitutional problem via the legislature or enforcement authorities is of minimal importance. In either case, Plaintiffs and the public should be permitted to seek pre-enforcement relief.

Finally, as the Court itself rightly noted, "[a]round the edges, the standards that apply in evaluating facial challenges to the constitutionality of statutes are not entirely clear." *McCullen*, 2009 WL 1942069, at *3. In such a muddled area of the law, rigid rules should not be used to avoid addressing and invalidating a clearly content-based restriction, particularly where the use of content is admitted by the State.

11

"opinions or viewpoints on controversial issues of public policy" but did not bar "topics that are not 'controversial issues of public policy'").[9]

### B. The Panel Did Not Address *Hill*'s Distinction Between Willing and Unwilling Listeners.

The panel's opinion also fails to address the key difference between the statutes upheld in *McGuire* and *Hill* and the Act at issue here. Both *McGuire* and *Hill* concerned restrictions on speech to *unwilling* listeners but did not restrict the ability to talk, on any part of the sidewalk, with a willing listener. This distinction is at the core of *Hill*, which plainly controls this case. *See Hill*, 530 U.S. at 708 ("The question is whether the First Amendment rights of the speaker are abridged by the protection the statute provides for the *unwilling listener*."); *Id.* at 715-16 (It is also important when conducting this interest analysis to recognize ***the significant difference*** *between state restrictions on a speaker's right to address a willing audience and those that protect listeners from unwanted communication. This statute deals only with the latter*.") (emphases added).

---

[9] *See also Hall v. Bd. of Sch. Comm'rs*, 681 F.2d 965, 970-71 (5th Cir. 1982) ("The Board has sought to regulate that speech based upon its content: whether it is 'political or sectarian,' or 'special interest material.' This is not regulation of 'time, place, or manner' of expression."); *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1251 (11th Cir. 2004) (finding content-based an ordinance that applied to "public demonstration or protest" defined as "support for, or protest of, any person, issue, political or other cause or action").

The panel did not discuss "the significant difference" emphasized by the Supreme Court. Rather, the panel's only discussion of the distinction between willing and unwilling listeners was to state that "[a]ny willing listener is at liberty to leave the zone, approach those outside it, and request more information." *McCullen*, 2009 WL 1942069, at *9. While this statement is of course true—and would have been true in *Hill*—it does not suffice to address whether the State can criminalize peaceful discussion with a willing listener inside the zone. The Supreme Court in *Hill* clearly thought this was a very important part of its decision to uphold the Colorado statute. *See Hill*, 520 U.S. at 727 ("Once again, it is worth reiterating that only attempts to address *unwilling* listeners are affected."). Yet the panel opinion simply assumed, without discussion, that the reasoning of *Hill* necessarily extends to peaceful speech to willing listeners.

The panel or the entire Court should address the distinction plainly. The speech restriction in the Act is entirely unprecedented. Past abortion clinic buffer zones upheld in the Supreme Court either (a) expressly targeted injunctions against repeat lawbreakers (as in *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994) and *Schenck v. Pro-Choice Network of Western New York, Inc.*, 519 U.S. 357 (1997)), or (b) restricted only close, unwanted approaches to speak to unwilling listeners (as in *Hill*). The Act's criminal prohibition of speaking even to willing listeners on large portions of public sidewalk, its distinctions among

13

speakers, and its distinctions expressly based on the content of speech all foreclose a finding of neutrality under *Hill*.

## CONCLUSION

For these reasons, Plaintiffs respectfully request rehearing, either by the panel or en banc. Speakers, law enforcement officers, and other courts will benefit from having these issues further addressed by the panel, the entire Court en banc, or individual judges thereof.

14

Respectfully submitted,

Michael J. DePrimo, Bar # 74378
Attorney at Law
P.O. Drawer 2440
107 Parkgate Drive
Tupelo, Mississippi 38803
Tel: (662) 491-2000
Email: michaeldeprimo@gmail.com

Philip D. Moran, Bar # 23517
Philip D. Moran P.C.
265 Essex Street, Suite 202
Salem, Massachusetts 01970
Tel: (978) 745-6085
Fax: (978) 741-2572
Email: philipmoranesq@aol.com

Benjamin W. Bull, Bar # 1132885
Alliance Defense Fund
15100 North 90th Street
Scottsdale, Arizona 85260
Tel: (480) 444-0020
Fax: (480) 444-0028
Email: bbull@telladf.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original and nine copies, as well as a PDF version on a computer readable disk, of the foregoing Appellants' Petition for Rehearing, or, in the Alternative, Rehearing En Banc, was sent by UPS Next Day Air Saver, postage prepaid, this 21st day of July, 2009, to the Clerk of Court and a true and correct copy by U.S. Mail, postage prepaid, this 20th day of July, 2009, to the counsel of record listed below.

Kenneth W. Salinger, Esq.
Administrative Law Division
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-2200 Ext. 2075
Fax: (617) 727-5785
ken.salinger@state.ma.us

Anna-Marie Tabor. Esq.
Assistant Attorney General
Civil Rights Division
One Ashburton Place
Boston, MA 02108
(617) 727-2200 ext. 2927
anna-marie.tabor@state.ma.us

Michele L. Schmidt

Michele L. Schmidt, Paralegal

16